2002 OK CR 20

**Gerardo VALDEZ, Petitioner,**

v.

**STATE of Oklahoma, Respondent.**

**No. PCD 2001–1011.**

Court of Criminal Appeals of Oklahoma.

May 1, 2002.

Robert A. Nance, F. Andrew Fugitt, Oklahoma City, OK, for Petitioner.

Margaret K. Pfeiffer, Lee Ann Anderson McCall, Sullivan & Cromwell, Washington, DC, for Petitioner.

Sandra L. Babcock, Attorney at Law, Minneapolis, MN, for Amicus Curiae.

Susan Otto, Federal Public Defender for the Western District, Oklahoma City, OK, for Petitioner.

W.A. Drew Edmondson, Attorney General of Oklahoma, Robert Whittaker, Assistant Attorney General, Oklahoma City, OK, for Respondent.

**ORDER GRANTING PETITIONER'S MOTION TO FILE SUBSTITUTED REPLY MEMORANDUM; ORDER DENYING MOTION FOR EVIDENTIARY HEARING AND DISCOVERY; OPINION GRANTING SECOND APPLICATION FOR POST-CONVICTION RELIEF AND REMANDING FOR RESENTENCING**

Opinion by JOHNSON, V.P.J.

¶ 1 Gerardo Valdez, Petitioner, was convicted of First Degree Malice Aforethought Murder and sentenced to death in Grady County District Court, Case No. CRF 89–139. Valdez appealed his Judgment and Sentence to this Court and we affirmed.[1] Valdez appealed to the United States Supreme Court and his Petition for a Writ of Certiorari was denied.[2] Valdez filed his original Application for Relief in this Court, in accordance with 22 O.S.Supp.1995, § 1089(D)(1), and that Application was denied.[3] Petitioner filed a Petition for a Writ of Habeas Corpus in the Western District of Oklahoma and the Petition was denied.[4] His appeal to this Court was denied; thereafter, his Petition for a Writ of Certiorari to the United States Supreme Court was denied.[5]

¶ 2 In April of 2001, the State of Oklahoma filed its application for order setting execution date, and this Court scheduled Petitioner's execution for June 19, 2001. *See Order Setting Execution Date,* D 1990–461 (April 23, 2001)(not for publication). Petitioner requested a clemency hearing and the Oklahoma Pardon and Parole Board voted three to one to recommend clemency to the Governor. On June 18, 2001, Frank Keating, Governor of Oklahoma, granted a thirty (30) day stay of execution to evaluate the recommendation to grant clemency.[6] He denied the recommendation for clemency on July 20, 2001.[7] Thereafter, upon request of the State of Oklahoma, this Court scheduled Petitioner's execution for August 30, 2001. *See Order Setting Execution Date,* D 1990–461 (August 1, 2001)(not for publication). Governor Keating issued a second thirty (30) day stay of execution on August 17, 2001.[8]

¶ 3 On August 22, 2001, Petitioner, through counsel, filed a Second Application for Post–

1. *Valdez v. State,* 1995 OK CR 18, 900 P.2d 363. The jury found the existence of three aggravating circumstances: that Valdez posed a continuing threat to society, that the murder was heinous, atrocious, or cruel, and that in perpetrating the homicide, Valdez created a great risk of death to more than one person. Although this Court affirmed Valdez's conviction and sentence on direct appeal, we found insufficient evidence to support the jury's finding that he perpetrated the homicide in such a way as to pose a great risk of death to other persons. *Id.* at ¶ 72, 900 P.2d at 384.

2. *Valdez v. Oklahoma,* 516 U.S. 967, 116 S.Ct. 425, 133 L.Ed.2d 341 (1995).

3. *Valdez v. State,* 1997 OK CR 12, 933 P.2d 931.

4. *Valdez v. Ward,* D.C.No. CIV–97–347–L (W.D.Okla.1998).

5. *Valdez v. Ward,* 219 F.3d 1222 (10th Cir.2000); *Valdez v. Gibson,* 532 U.S. 979, 121 S.Ct. 1618, 149 L.Ed.2d 481 (2001).

6. Executive Order, 2001–21 (June 18, 2001).

7. Executive Order, 2001–24 (July 20, 2001).

8. Executive Order, 2001–28 (August 17, 2001).

Conviction Relief. Also filed that day was a Motion for Evidentiary Hearing and Discovery, an Application for Special Admission of Non Resident Attorneys, and a Motion for Leave to File Amicus Curiae Brief from the Government of Mexico. We directed the State of Oklahoma to file a Response to Petitioner's Second Application for Post-Conviction Relief, granted the Motion of the Mexican Government to file an Amicus brief, granted the Applications for Special Admission of Non Resident Attorneys, stayed the order for execution indefinitely pending the outcome of these proceedings, and established a briefing schedule. *See Order Directing Response,* PCD 2001–1011 (September 10, 2001)(not for publication).

¶ 4 Attorneys Margaret Pfeifer, LeeAnn Anderson McCall, Sandra Babcock, and Robert Nance entered their appearances in the case. In accordance with the schedule set forth in our September 10th, 2001 Order, the State of Oklahoma filed its Response and its two volume Appendix on November 9, 2001. The Brief *Amicus Curiae* of the United Mexican States was filed on November 9, 2001. On November 20, 2001, Petitioner, through counsel, filed a Motion for Leave to File Reply Memorandum, with the Reply Memorandum attached; on November 27, 2001, Petitioner moved to substitute the proposed Reply Brief. Having considered that request, we find Petitioner's Motion for Leave to file the substituted Reply Memorandum should be and hereby is **GRANTED.**

¶ 5 The rules regarding the filing and review of subsequent applications for post-conviction relief in capital cases are set forth in Rule 9.7(G), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2001) and 22 O.S.2001, § 1089(D)(8) and (9). Rule 9.7(G) provides:

(1) A subsequent application for post-conviction relief shall not be considered, unless it contains claims which have not been and could not have been previously presented in the original application because the factual or legal basis was unavailable, as defined in Section 1089(D)(9) of Title 22;

(2) An original application for post-conviction relief not filed in a timely manner shall not be considered, unless it contains claims which have not been and could not have been previously presented in a timely original application because the factual or legal basis was unavailable, as defined in Section 1089(D)(9) of Title 22.

(3) No subsequent application for post-conviction relief shall be considered by this Court unless it is filed within sixty (60) days from the date the previously unavailable legal or factual basis serving as the basis for a new issue is announced or discovered.

Title 22, Section 1089(D)(8) provides that if a subsequent application for post-conviction relief is filed, we may not consider its merits or grant relief unless the application "contains specific facts establishing that the current claims and issues have not been and could not have been presented previously" because the factual or legal basis was unavailable. 22 O.S.Supp.1995, § 1089(D)(1); *see also Sellers v. State,* 1999 OK CR 6, ¶ 2, 973 P.2d 894, 895. We now consider Petitioner's propositions in light of these restrictions.

¶ 6 Certain factual claims are not disputed in this proceeding. The parties agree that the State of Oklahoma did not comply with the requirements of Article 36 of the Vienna Convention on Consular Relations,[9] which requires local authorities to notify a detained foreign national, without delay, of his right to communicate with his consulate. Upon the detainee's request, Article 36 requires the authorities to notify consular officials of the person's incarceration without delay. Vienna Convention, art. 36, 21 U.S.T. at 100–101. Because authorities in the State of Oklahoma did not comply with Article 36, the Mexican consulate was not notified of Valdez's arrest for First Degree Murder. The Government of Mexico did not learn of Valdez's arrest, conviction and sentence until April of 2001, when one of Valdez's relatives contacted the Mexican consulate in El Paso, Texas and informed consular officials of Valdez's upcoming execution in Oklahoma.

---

9. Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77; hereafter the "Vienna Convention" or "Convention."

¶ 7 Once informed, consular officials assisted Valdez at his clemency hearing before the Oklahoma Board of Pardons and Paroles. The Government of Mexico retained experts and experienced attorney(s) to assist Valdez.[10] Through investigation of his background and medical history, it was learned Valdez suffers from severe organic brain damage [11]; was born into extreme poverty; received limited education, and grew up in a family plagued by alcohol abuse and instability. Most significant of these findings, according to counsel for Valdez, is that he experienced head injuries in his youth which greatly contributed to and altered his behavior.

¶ 8 According to the experts who evaluated Valdez's Quantitative Electroencephalogram (QEEG), damage to the frontal lobe of the brain-as indicated in Valdez' QEEG-disrupts the frontal lobes' ability to regulate the temporal lobes. "This malfunction creates thought disturbances, impairs judgment, and compromises impulse control.... Use of alcohol would exacerbate these problems." [12] Another syndrome associated with the type of brain damage Petitioner has is the distortion of religious beliefs.

¶ 9 This information was presented to the Oklahoma Pardon and Parole Board at Valdez's clemency hearing, and as a result, the

Board recommended that Valdez' death sentence be commuted to life in prison without the possibility of parole. This newly developed information, obtained through the Mexican consulates efforts and investigation, was then presented to Governor Frank Keating and he denied clemency. While acknowledging the State of Oklahoma had not complied with Article 36 of the Vienna Convention, Governor Keating stated he believed the violation did not have a prejudicial effect on the jury's determination of guilt and sentence.[13]

¶ 10 In this subsequent Application for Post–Conviction Relief, Petitioner raises four grounds for relief:

1. This Court must follow the decision of the International Court of Justice in *LaGrand* [14] and provide relief on the basis of Oklahoma's admitted violation of his rights under Article 36 of the Vienna Convention on Consular Relations; [15]

2. Mr. Valdez is entitled to relief regardless of proof that Oklahoma's violation of Article 36 was prejudicial; [16]

3. This Court must afford Mr. Valdez a full and fair opportunity to challenge his conviction and sentence on the basis of Oklahoma's admitted violation of Article 36; [17] and

4. Mr. Valdez is entitled to a new trial.[18]

---

10. Petitioner has provided this Court with Affidavits from the Honorable Juan Manuel Gomez Robledo (Exh. 5), from Oliver Albert Farres Martins (Exh. 6), and from Dr. Ricardo Weinstein, Ph.D. (Exh. 7).

11. The Affidavit of Dr. Weinstein shows he administered a quantitative encephalogram and concluded Petitioner "has moderate to significant impairment for abstract reasoning and logical analysis, flexibility of thought for complex stimuli, incidental learning of simple stimuli, and psychomotor actions ..." He concluded Petitioner had front-temporal lobe brain damage.

12. Affidavit of Maurice B. Sterman, Ph.D. (Exh. 9)

13. *See* f. 8.

14. *F.R.G. v. United States*, 2001 ICJ 104 (June 27, 2001), hereafter *"LaGrand."*

15. Sub-propositions to this argument are that (a) Article 36 of the Vienna Convention on Consular Relations provides foreign nationals who are detained by state or federal authorities a right to

consular notification and assistance, and (b) the decision in *LaGrand* defining the scope of the rights guaranteed by Article 36 of the Vienna Convention is authoritative and binding on this Court under the Oklahoma Constitution and the Supremacy Clause of the U.S. Constitution.

16. Sub-propositions to this claim are (a) no prejudice need be shown to obtain relief for an Article 36 violation, and (b) even if this Court could properly require Mr. Valdez to demonstrate that Oklahoma's violation of his Article 36 rights caused him prejudice, the record shows overwhelming prejudice.

17. Sub-propositions to this claim are that (a) under *LaGrand*, Oklahoma may not invoke the doctrine of waiver or its procedural default rules in this case, and (b) even if Oklahoma's procedural default rule could be applied, Mr. Valdez's claim is new law within the meaning of a recognized exception to Title 22, Section 1089.

18. Sub-propositions to this claim are that (a) *LaGrand* and the plain language of Article 36 require this Court to give full effect to the rights

¶ 11 As noted above, we must consider these claims in light of the restrictions set forth in 22 O.S.Supp.1998, § 1089(D)(8) & (9). A legal basis of a claim is unavailable if: (1) it was not recognized by or could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before that date; or (2) it is a new rule of constitutional law that was given retroactive effect by the United States Supreme Court or a court of appellate jurisdiction of this state and had not been announced on or before that date. A factual basis of a claim is unavailable if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date. 22 O.S. 2001, § 1089(D)(9).

¶ 12 Petitioner submits this Court should entertain this subsequent application for post-conviction relief on the ground that the legal basis for relief was previously unavailable. The legal basis upon which Petitioner relies is a June 27th, 2001, decision of the International Court of Justice (hereafter "ICJ") in *F.R.G. v. United States*, 2001 ICJ 104 (hereafter *LaGrand* ).

¶ 13 The *LaGrand* case arose after the State of Arizona arrested, tried, and convicted two German nationals, the LaGrand brothers, without giving them notice of their rights under Article 36 of the Vienna Convention. The brothers did not assert their right to contact and obtain consular assistance until after their convictions and sentences were affirmed in state appellate proceedings. The Ninth Circuit affirmed the federal district court's denial of habeas corpus relief on the claim relating to the Article 36 Convention violation on grounds of procedural default. *LaGrand v. Stewart*, 133 F.3d 1253, 1259 (9th Cir.1998), *cert. denied*, 525 U.S. 971, 119 S.Ct. 422, 142 L.Ed.2d 343 (1998). It was not until after the Ninth Circuit's decision that the LaGrand brothers were formally notified of their rights to consular access. Even though the Government of Germany attempted to intervene and provisional orders were issued by the ICJ, the brothers were still executed.

¶ 14 In *LaGrand,* the ICJ found the United States, through the State of Arizona, had violated Article 36 of the Vienna Convention. It held this breach not only violated the rights of Germany under the treaty, but also violated the individual rights of the LaGrand brothers. *F.R.G. v. United States,* 2001 ICJ 104, ¶ 77 ("Based on the text of these provisions, the Court concludes that Article 36, paragraph 1, creates individual rights, which, by virtue of Article I of the Optional Protocol, may be invoked in this Court by the national State of the detained person.") ICJ held prejudice need not be shown to a show a violation of Article 36 of the Convention. *Id.* at ¶ 74.

¶ 15 The ICJ also held the application of the rule of "procedural default" cannot be applied by the states individually or by the United States to prevent review of an Article 36 violation. *Id.* at ¶¶ 90–91. Specifically, the ICJ noted with reference to the LaGrands, that although the federal courts examined the claim of ineffective counsel, the procedural default rule "prevented them from attaching any legal significance to the fact, *inter alia,* that the violations of ... Article 36, paragraph 1, prevented Germany, in a timely fashion, from retaining private counsel for them and otherwise assisting in their defence as provided for by the Convention." *Id.* at ¶ 91. Accordingly, the rule of procedural default, in the LaGrand case, prevented "the full effect from being given to the purposes for which the rights accorded under this article are intended." *Id.*

¶ 16 Petitioner submits this Court must follow the decision of the ICJ in *LaGrand* and provide relief to Petitioner on the basis of Oklahoma's admitted violation of his rights under Article 36 of the Vienna Convention. Petitioner advances several reasons in support of this proposition. First, because the United States signed and ratified the Optional Protocol to the Vienna Convention as well as the U.N. Charter acknowledging compliance with the decisions of the ICJ, it is

secured by Article 36 by allowing a challenge to a conviction and sentence based on a violation of Article 36; (b) both *LaGrand* and the plain language of Article 36 require a new trial in this case, and (c) at a minimum, a new sentencing hearing is required.

bound by the ICJ's rulings concerning interpretation or application of the Convention.[19] Second, principles of *stare decisis* require this Court to follow the ruling in *LaGrand.* Third, the doctrine of issue preclusion also makes the decision in *LaGrand* binding on the United States, because the United States fully developed, defended and argued its position in *LaGrand,* and knew it would be bound by the ICJ's decision.[20] Fourth, under the rule of *pacta sunt servanda,* the United States is bound to follow the law of the treaties. Fifth, to apply the holding of the ICJ to some foreign nationals and not to others would violate the equal protection clause of the U.S. Constitution.[21] Sixth, denying *LaGrand's* interpretation of Article 36 rights to Mr. Valdez because he is not German would create a non-uniform result contrary to the foreign relations law policy designed to achieve uniformity of result despite different legal systems.[22]

¶ 17 Finally, Petitioner submits the State of Oklahoma is bound by the law of treaties to the same extent as the United States. U.S. Const., art. VI, § 2; Okla. Const.art.I, § 1. In its *Amicus* brief, the Government of Mexico also contends the State of Oklahoma cannot advance its doctrine of procedural default to preclude review of Valdez' claims because application of the doctrine would violate the Supremacy Clause. In *LaGrand,* the ICJ ruled the application of the rule of procedural default effectively prevented "full effect from being given to the purposes for which the rights accorded under this article [Article 36] are intended." *LaGrand,* 2001 ICJ 104, ¶ 91. In this case, application of the rule of procedural default would preclude this Court's ability to review and consider the merits of Valdez' claims, and Petitioner and the Government of Mexico submit the doctrine must give way to give full effect to the purposes of Article 36 of the Convention.

¶ 18 The State of Oklahoma argues *LaGrand* is not binding on this Court. While acknowledging federal statutes and treaties are the supreme law of the land, U.S. Const., Art. IV, § 2, the State also argues the Supremacy clause does not convert violations of treaty provisions into violations of constitutional rights. The State of Oklahoma insists Petitioner has procedurally defaulted this claim because it is not based upon new law, and this Court, under the limited review afforded under Oklahoma's Capital Post–Conviction Act, is not entitled to grant relief on that basis.

■ ¶ 19 The 1995 Amendments to the Capital Post–Conviction Procedure Act greatly circumscribed this Court's power to apply intervening changes in the law to post-conviction applicants. *See e.g. Walker v. State,* 1997 OK CR 3, 31, f. 42, 933 P.2d 327, 337–338, f. 42, *cert. denied,* 521 U.S. 1125, 117 S.Ct. 2524, 138 L.Ed.2d 1024 (1997). Now under the Act, for an alleged intervening change in the law to constitute sufficient reason for raising a claim in a subsequent

**19.** The Government of Mexico, in its *amicus* brief, also submits the State of Oklahoma is bound by the terms of the United States' ratification of the U.N. Charter under the Supremacy Clause of the U.S. Constitution. It notes clear and unequivocal language of Article 94 of the U.N. Charter which specifically provides that "each Member of the United Nations undertakes to comply with the decision of the International Court of Justice in any case to which it is a party."

**20.** The Government of Mexico also argues the ICJ's ruling is binding under customary international law, which is part of the law of the United States. Because the United States ratified the Optional Protocol to Article 36 of the Vienna Convention, it has specially agreed to be bound to the ICJ's jurisdiction over disputes involving the interpretation or application of the Convention.

**21.** The Government of Mexico also adopts this claim, additionally noting courts in the United States cannot provide a remedy to German nationals that is not equally applicable to non Germans without violating the United States' obligations under the Convention on the Elimination of All Forms of Racial Discrimination, which was ratified by the U.S. Senate in 1994.

**22.** The Government of Mexico acknowledges the judgment in *LaGrand* binds only the parties to the litigation, but argues the principles pronounced in the case, including that an apology for a breach of Article 36 of the Convention is insufficient, is authoritative precedent for all states party to the Convention. *Amicus* argue that future breaches of Article 36 by States within the United States involving non-German nationals would have a similar outcome before the ICJ.

proceeding to secure relief, a petitioner must show the intervening change in the law was unavailable at the time of his direct appeal or his original application. 22. O.S.2001, § 1089(D)(9). This Petitioner cannot do.

¶ 20 In *Breard v. Greene*, 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998), the Supreme Court held Breard had procedurally defaulted his claim to a violation of Article 36 of the Vienna Convention when he did not raise the claim in state court proceedings below. In reaching this decision, the Court explained that while giving

> respectful consideration to the interpretation of an international treaty rendered by an international court with jurisdiction to interpret such, it has been recognized in international law that, absent a clear and express statement to the contrary, the procedural rules of the forum State govern the implementation of the treaty in that State.

523 U.S. at 375, 118 S.Ct. at 1354; *see also Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700, 108 S.Ct. 2104, 2108, 100 L.Ed.2d 722 (1988). The Supreme Court noted the language of the Convention which provides the rights expressed in the Convention "shall be exercised in conformity with the laws and regulations of the receiving State" provided that the laws of the receiving State "must enable the full effect to be given to the purposes for which the rights accorded under this Article are intended." Article 2, 21 U.S.T. at 101. The Supreme Court also recognized the rule of procedural default applies to violations of the U.S. Constitution as well. *Breard, id.,* 523 U.S. at 376, 118 S.Ct. at 1355.

¶ 21 The State of Oklahoma submits, and we agree, that the legal basis for his claim was available to him from the time of his arrest, and consequently at the time of his first post-conviction application. In fact, other defendants in Oklahoma have raised claims relating to violation of the consular notification provisions of the Vienna Conviction and Petitioner has not advanced a reasonable explanation for his failure to previously assert the violation. *See Flores v. State*, 1999 OK CR 52, 994 P.2d 782; *Martinez v. State*, 1999 OK CR 33, 984 P.2d 813;

*Al-Mosawi v. State*, 1998 OK CR 18, 956 P.2d 906. Therefore, the basis of Petitioner's claim—that his rights were violated when Oklahoma did not notify him of his right to consular notification under the Convention— could have reasonably been formulated prior to the ICJ decision in *LaGrand.*

¶ 22 Further, *LaGrand* is not a "new rule of constitutional law that was given retroactive effect by the United States Supreme Court or a court of appellate jurisdiction of this state." 22 O.S.2001, § 1089(D)(9). Only that portion of *LaGrand* which pronounced the Convention confers "individual rights" and which addressed our doctrine of procedural default is arguably new "law." Whether the Convention creates individual rights has been raised in numerous courts across the country for years, and could reasonably have been formulated prior to the ICJ decision in *LaGrand.* Whether the treaty creates individually enforceable rights or not, the United States Supreme Court in *Breard* specifically rejected the contention that the doctrine of procedural default was not applicable to provisions of the Vienna Convention and until such time as the supreme arbiter of the law of the United States changes its ruling, its decision in *Breard* controls this issue. Petitioner cannot be afforded review under our statutes on the ground that the ICJ's interpretation of the Convention in *LaGrand* constitutes a new rule of constitutional law.

¶ 23 Accordingly, we are not persuaded by Petitioner's claim that rules of procedural default may not be applied to claims arising from a violation of Article 36 of the Vienna Convention. The legal basis for the claim is not new and was available at the time of Petitioner's first Application for Post-conviction Relief regardless of the ICJ's decision in *LaGrand.* For this Court to decide the ICJ's ruling overrules a binding decision of the United States Supreme Court and affords a judicial remedy to an individual for a violation of the Convention would interfere with the nation's foreign affairs and run afoul of the U.S. Constitution.

¶ 24 For these reasons, this Court cannot reach the merits of Petitioner's subsequent Application for Post-Conviction Relief

on the ground that the legal basis for relief was previously unavailable. However, despite the parties' statements the contrary, we believe this Court should review this subsequent Application for Post–Conviction Relief on the ground that it would appear no factual basis of the Petitioner's prior medical problems was ascertained by prior trial or appellate counsel before the filing of Petitioner's prior appeals. 22 O.S.Supp.1998, § 1089(D)(9).

¶ 25 Petitioner was charged with murder in 1989. He had court-appointed counsel. His court-appointed counsel was inexperienced in capital cases; in fact, Petitioner's case was his counsel's *first* capital case.[23] Petitioner's trial counsel did not have the financial resources available to properly investigate Petitioner's childhood, social history or other aspects of his life. While arguments can be made that trial counsel could have requested funds to hire expert witnesses, it is evident that trial counsel's inexperience in capital litigation caused him to believe such funds were unavailable. We cannot ignore the significance and importance of the factual evidence discovered with the assistance of the Mexican Consulate. It is evident from the record before this Court that the Government of Mexico would have intervened in the case, assisted with Petitioner's defense, and provided resources to ensure that he received a fair trial and sentencing hearing.

¶ 26 While we have no doubt the evidence discovered with the assistance of the Mexican Consulate could have been discovered earlier, under the unique circumstances of this case, it is plain that the evidence was *not* discovered due to trial counsel's inexperience and ineffectiveness.[24] *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *Strickland* sets forth a two-part test which must be applied to determine whether a defendant has been denied effective assistance of counsel. First, the defendant must show that counsel's performance was deficient, and second, he must

show the deficient performance prejudiced the defense. Unless the defendant makes both showings, "it cannot be said that the conviction .... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 466 U.S. at 687, 104 S.Ct. at 2064.

¶ 27 Although this Court has addressed claims relating to trial counsel's effectiveness in his prior appeals, in those appeals, this Court was not presented with a claim that trial court failed to discover evidence relating to Petitioner's social, mental, and health history. This Court was not presented with a claim that trial counsel did not inform Petitioner he could have obtained financial, legal and investigative assistance from his consulate. We believe trial counsel, as well as representatives of the State who had contact with Petitioner prior to trial and *knew* he was a citizen of Mexico, failed in their duties to inform Petitioner of his right to contact his consulate. In hindsight, and so many years following Petitioner's conviction and direct appeal, it is difficult to assess the effect consular assistance, a thorough background investigation and adequate legal representation would have had. However, this Court cannot have confidence in the jury's sentencing determination and affirm its assessment of a death sentence where the jury was not presented with very significant and important evidence bearing upon Petitioner's mental status and psyche at the time of the crime. Absent the presentation of this evidence, we find there is a reasonable probability that the sentencer might "have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2069.

¶ 28 By our ruling today, this Court exercises its power to grant relief when an error complained of has resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right. 20

---

**23.** Affidavit of Robert R. Robles, Petitioner's App., Exhibit 16.

**24.** Although the claim of ineffective trial counsel was raised in prior proceedings to secure relief,

appellate counsel(s) also failed to discover this evidence without the assistance of the Mexican Consulate.

O.S.2001, § 3001.1.[25] Accordingly, we hereby **GRANT** Petitioner's Subsequent Application for Post–Conviction Relief, and **REMAND** this case to the District Court of Grady County for **RESENTENCING.**

LUMPKIN, P.J., concur in part/dissent in part.

CHAPEL and STRUBHAR, JJ., concur.

LILE, J., specially concurs.

LUMPKIN, Presiding Judge: concur in part/dissent in part.

¶ 1 I concur that the legal basis for Petitioner's claim was available at the time of his first application for post-conviction relief. Not only that, but it was available at trial, on direct appeal, and his petition for habeas corpus relief in the federal courts. *See Valdez v. State*, 900 P.2d 363 (Okl.Cr.1995); *Valdez v. State*, 933 P.2d 931 (Okl.Cr.1997); *Valdez v. Ward*, 219 F.3d 1222 (10th Cir.2000). His failure to raise the claim at those times bars future consideration of the issue. Therefore, we do not reach the merits of the claim in this subsequent Application for Post–Conviction Relief.

¶ 2 Because of that fact, I dissent to the review of trial counsel's performance. The issue of ineffective assistance of trial counsel has been previously raised, and rejected. In his direct appeal, Petitioner argued trial counsel was ineffective for: 1) failing to challenge the State's expert's finding of competency; 2) failing to file a motion to suppress Appellant's confessions; 3) failing to request a *Jackson v. Denno*[1] hearing on the voluntariness of the confessions; 4) failing to request jury instructions explaining admissions standards for extra-judicial confessions; 5) failing to request jury instructions on second degree murder and voluntary intoxication; 6) failing to investigate and present testimony to rebut the State's evidence supporting the alleged aggravators; and 7) failing to object to numerous instances of prosecutorial misconduct. *Valdez v. State*, 900 P.2d 363, 387–388 (Okl.Cr.1995).

¶ 3 In his first Application for Post–Conviction Relief, Petitioner alleged trial counsel was ineffective for failing to raise a *Cooper*[2] claim. *Valdez v. State*, 933 P.2d 931, 933–934 (Okl.Cr.1997). In his request to the 10th Circuit Court of Appeals for habeas relief, Appellant argued trial counsel was ineffective for: 1) failing to sufficiently challenge his competency; 2) failing to move to suppress his confessions or to request a hearing on their voluntariness; and 3) failing to request jury instructions on second degree murder and voluntary intoxication. *Valdez v. Ward*, 219 F.3d 1222, 1243–1245 (10th Cir.2000).

¶ 4 During the course of the protracted litigation in this case from 1989 to the present, Petitioner has been represented by not less than four different lawyers. At each stage of the appeals process he has been represented by independent counsel, who have been experienced specialists in criminal law and procedure. Not once during this extended period of time have any of these lawyers raised the issue now presented to this Court, regardless of the fact the evidence has always been known and available to procure upon reasonable diligence.

¶ 5 This Court has "repeatedly stated that Oklahoma's Post–Conviction Procedure Act

---

**25.** My Honorable colleague suggests the Court's ruling today "disregards the concept of the Rule of Law." What justice can this Court guarantee and protect if it cannot correct a Constitutional violation which is fundamentally unfair? The case before us today is truly a "special case" where the interests of justice and due process are genuinely implicated. *Cf. Murray v. Carrier*, 477 U.S. 478, 495, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (in appropriate cases, the principles of comity and finality that inform the concepts of cause and prejudice must yield to the imperative of correcting fundamentally unjust incarceration). While this case is not one of actual innocence, by our decision today, the majority finds it presents a persuasive claim that had appropriate counsel and assistance been provided, Petitioner might have proven he deserved a lesser punishment than death. The concept of the Rule of Law should not bind this Court so tightly as to require us to advocate the execution of one who has been denied a fundamentally fair sentencing proceeding due to trial counsel's ineffectiveness, particularly when that ineffectiveness is at least in part attributable to State action.

**1.** *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

**2.** *Cooper v. Oklahoma*, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996).

is not an opportunity to raise new issues, **resubmit claims already adjudicated,** or assert claims that could have been raised on direct appeal." *Rojem v. State,* 925 P.2d 70, 72–73 (Okl.Cr.1996) (emphasis added). Complaints concerning the performance of trial counsel are barred on post-conviction when the claim was raised on direct appeal. *Patton v. State,* 989 P.2d 983, 988 (Okl.Cr.1999); *Darks v. State,* 954 P.2d 169, 172 (Okl.Cr. 1998); *Hale v. State,* 934 P.2d 1100, 1102 (Okl.Cr.1997); *Smith v. State,* 878 P.2d 375, 378 (Okl.Cr.1994). Accordingly, the doctrine of *res judicata* bars re-litigation of the issue of ineffective assistance of counsel in this case. As that issue is barred from consideration in this subsequent Post–Conviction Application, there is no legal basis to remand this case for resentencing.

¶ 6 The legal doctrines of waiver and *res judicata* have been developed through the ages to ensure finality of judgments. By disregarding binding authority, in order to assist a defendant in litigating issues already decided or waived, this Court disregards the concept of the Rule of Law. The information presented in this subsequent application for post-conviction relief has already been presented to the Governor of the State of Oklahoma to consider in the exercise of the clemency power granted to that office. That presentation was a proper part of the due process granted to the Petitioner as a part of our state law. The fact the Governor did not find that evidence sufficient to warrant clemency does not give this Court the right to use the judicial fiat, especially when that fiat disregards both statutory and case law, to override that executive decision. Even in cases where a defendant has raised the issue of notification of counselor rights in the first instance, we have not found prejudice, which would require a new trial or resentencing. *See Martinez v. State* 992 P.2d 426, 429 (Okl.Cr.1999); *Al–Mosawi v. State,* 956 P.2d 906, 909 (Okl.Cr.1998).

¶ 7 In this case, more than ten years elapsed from the time of arrest until any interested party in this case thought it significant to seek assistance from the Mexican consulate. While it is commendable the Mexican government has provided the assistance it has at this time, the only available venue for presenting that information remains the clemency process. It must be remembered, at trial Petitioner was afforded the benefit of experts in the persons of two psychiatrists and one psychologist to assist in his insanity defense. There has been no deprivation of rights, experts, or legal counsel upon which this Court is empowered to disregard the law that binds it. Justice for everyone requires following the law for all.[3] Once a court begins disregarding the law to achieve a desired result in a case, it starts down a slippery slope, which ultimately fractures and decimates the freedom guaranteed through the Rule of Law. This is not a case of actual innocence. The law provides the venue for raising that issue at anytime. It is merely a case where a defendant wants to put on more mitigation evidence to seek a better result on sentencing after **exhausting all appeals.** This Court should not make political decisions; it should bind itself to applying the law.

¶ 8 For the reasons stated, I must dissent to the Court's decision to remand this case for resentencing.

---

3. As I stated previously in *Hain v. State,* 852 P.2d 744, 753–754 (Okl.Cr.1993)(Lumpkin, P.J. concurring in part/dissenting in part):

This Court in its holding cites "principals [sic] of fundamental fairness" in reversing for a new second-stage trial. *Ante* at 753. This puts me in a quandary, for how does one dissent to principles of fundamental fairness? This quandary, however, shows precisely why use of this equitable principle cannot serve as the basis for a ruling of law. As was said over a century ago:

Equity is a Roguish thing: for Law we have a measure, know what to trust to, Equity is according to the Conscience of him that is Chancellor, and as that is larger or narrower, so is Equity. 'Tis all one as if they should make the Standard for the measure, we call, a Chancellor's Foot, what an uncertain measure would this be? One Chancellor has a long Foot, another a short Foot, a third an indifferent Foot. 'Tis the same thing in the Chancellor's Conscience.

Seldon, John, Equity Table Talk (Arber, Edward, ed. in English Reprints, nos. 1–7, London: 1869) at 46. What is "fundamental fairness" to one judge may not be "fundamental fairness" to another.

The same is true here. Either the doctrines of waiver and *res judicata* apply to all or the doctrines are eviscerated.

LILE, Judge: specially concurs.

¶1 As the United States Supreme Court has noted, in cases such as this, it may be very difficult to establish that a failure to notify defendant of his treaty rights resulted in prejudice. In this case, that difficult burden has been met. Appellant is entitled to a re-sentencing hearing.