OSCN Found Document:GLOSSIP v. STATE

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 GLOSSIP v. STATE
2023 OK CR 5
529 P.3d 218
Case Number: PCD-2023-267; D-2005-310
Decided: 04/20/2023
RICHARD EUGENE GLOSSIP, Petitioner v. THE STATE OF OKLAHOMA, Respondent

Cite as: 2023 OK CR 5, 529 P.3d 218

 

OPINION DENYING SUBSEQUENT APPLICATION
FOR POST-CONVICTION RELIEF, MOTION FOR
EVIDENTIARY HEARING, MOTION FOR DISCOVERY,
AND JOINT MOTION TO STAY EXECUTION

LEWIS, JUDGE:

¶1 Petitioner, Richard Eugene Glossip, was convicted of First-Degree (malice) Murder in violation of 21 O.S.Supp.1996, § 701.7(A), in Oklahoma County District Court Case No. CF-1997-244, after a jury trial occurring in May and June 2004, before the Honorable Twyla Mason Gray, District Judge.[1] The jury found the existence of one aggravating circumstance: that Glossip committed the murder for remuneration or the promise of remuneration or employed another to commit the murder for remuneration or the promise of remuneration and set punishment at death.[2] Judge Gray formally sentenced Glossip in accordance with the jury verdict on August 27, 2004.

¶2 This Court, on direct appeal, affirmed Glossip's murder conviction and sentence of death in Glossip v. State, 2007 OK CR 12, 157 P.3d 143. Glossip, thereafter, filed an initial application for post-conviction relief, which was denied in an unpublished opinion. Glossip v. State, No. PCD-2004-978, slip op. (Okl.Cr., Dec. 6, 2007). Glossip has filed other subsequent applications for post-conviction relief, which this Court has denied.[3] Glossip's execution is currently scheduled for May 18, 2023. He is now before this Court with his fifth application for post-conviction relief, a motion for evidentiary hearing, and a motion for discovery, as well as a joint motion for a stay of execution filed in Oklahoma Court of Criminal Appeals Case No. D-2005-310.

¶3 The Attorney General of Oklahoma has filed a response requesting that this Court vacate Glossip's twenty-five-year-old murder conviction and sentence of death and send the case back to the district court for a new trial. Despite the request, Attorney General Gentner F. Drummond is "not suggesting that Glossip is innocent of any charge made against him" and "continues to believe that Glossip has culpability in the murder of Barry Van Treese." The Attorney General's "concession" does not directly provide statutory or legal grounds for relief in this case. This Court's review, moreover, is limited by the legislatively enacted Post-Conviction Procedure Act found at 22 O.S.Supp.2022, § 1089(D)(8).

¶4 The Attorney General has also joined Glossip in a joint motion for stay of execution asking that Glossip's execution be stayed until August 2024, because he believes Glossip's application satisfies the requirements of 22 O.S.2021, § 1001.1(C). The Attorney General takes no position on the merits of Glossip's claims in the motion. The Attorney General also stated, in the joint motion, that more time is required for his special prosecutor to complete a review of the case. That review, however, is now complete according to the Attorney General's response to Glossip's application for post-conviction relief. For the reasons below, Glossip is neither entitled to post-conviction relief, nor a stay of execution.

I.

¶5 The facts of Glossip's crime presented at trial were detailed in the 2007 direct appeal opinion. We reiterate a few of the facts here. Justin Sneed, the co-defendant, pled guilty, received a sentence of life without parole, and agreed to testify against Glossip. The law required Sneed's testimony be corroborated, and the jury was asked to determine whether it was corroborated in the trial court's instructions.

¶6 Among the corroborating evidence noted in the direct appeal was that Barry Van Treese was the owner of the Best Budget Inn in Oklahoma City. Richard Glossip worked as the manager, and he lived on the premises with his girlfriend D-Anna Wood. Glossip hired Justin Sneed to do maintenance work at the motel. By all credible accounts, Sneed was under Glossip's control.

¶7 In the early morning hours of January 14, 1997, Sneed entered room 102 and bludgeoned Van Treese to death with a baseball bat. Sneed then went to Glossip's room and told him he had killed Van Treese and that a window was broken during the attack. Glossip told D-Anna Wood that two drunks had broken out a window.

¶8 Glossip went to Van Treese's room to help cover the busted window, but later denied seeing Van Treese's body. Glossip told Sneed to drive Van Treese's car to a nearby parking lot and retrieve money that would be under the seat. The envelope contained $4,000.00, which Glossip divided with Sneed. Police later recovered $1,700.00 from Sneed and $1,200.00 from Glossip.

¶9 That morning, Billye Hooper noticed that Van Treese's car was gone and asked Glossip where it was located. Glossip told Hooper that Van Treese left to obtain supplies to repair and remodel rooms. Glossip told the housekeeper that he and Sneed would clean the downstairs rooms, including 102. Glossip, Wood, and part owner and security guard Cliff Everhart later drove around looking for Van Treese. Glossip kept Everhart away from Room 102.

¶10 Later, Everhart and Oklahoma City Police Sgt. Tim Brown began discussing Glossip's conflicting statements, so they decided to check Room 102 on their own. At about 10:00 p.m. they discovered Van Treese's body in his room. Glossip later told investigators that he was deceitful because he felt like he was involved in the crime; he said he was not trying to protect Sneed.

¶11 Sneed later told investigators and testified at trial that Glossip offered him $10,000.00 to kill Van Treese. Glossip feared he would be fired due to discrepancies in the motel's finances, so he employed Sneed to kill Van Treese. Sneed has never come forward stating that he wishes to recant or change his trial testimony.

II.

¶12 This case has been thoroughly investigated and reviewed in numerous appeals. Glossip has been given unprecedented access to the prosecution files, including work product, yet he has not provided this Court with sufficient information that would convince this Court to overturn the jury's determination that he is guilty of first-degree murder and should be sentenced to death based on the murder for remuneration or promise of remuneration aggravating circumstance. His new application provides no additional information which would cause this Court to vacate his conviction or sentence.

¶13 Glossip is filing this latest application for post-conviction relief because the Oklahoma Attorney General recently turned over a box of "prosecutor's notes" to his appellate attorneys. The Attorney General previously turned over seven (7) boxes of material in September 2022. Issues surrounding the material in these boxes were raised in two separate applications for post-conviction relief in 2022. This latest box (box 8) was turned over on January 27, 2023. Petitioner claims that this application is being made within sixty (60) days of the discovery of the evidence in box 8, as required by Rule 9.7, Rules of the Oklahoma Court of Appeals, Title 22, Ch.18, App. (2023).

¶14 Glossip also states that this application is not his full and final presentation of these claims. He seeks leave to amend and/or supplement this application when he has had the opportunity to fully develop the claims. He states that the Attorney General has no objection to this request.

¶15 Glossip's request to amend is not well taken. The Oklahoma Statutes provide that:

All grounds for relief that were available to the applicant before the last date on which an application could be timely filed not included in a timely application shall be deemed waived.

No application may be amended or supplemented after the time specified under this section. Any amended or supplemental application filed after the time specified under this section shall be treated by the Court of Criminal Appeals as a subsequent application.

22 O.S.Supp.2022, § 1089(D)(2). Further applications will be treated as required by statute.

III.

¶16 Glossip raises five propositions in support of this subsequent post-conviction appeal. Again, this Court's review is limited by the Oklahoma Post-Conviction Procedure Act. Title 22 O.S.Supp.2022, § 1089(D)(8), which provides for the filing of subsequent applications for post-conviction relief.[4] The Post-Conviction Procedure Act is not designed or intended to provide applicants with repeated appeals of issues that have previously been raised on appeal, or could have been raised but were not. Slaughter v. State, 2005 OK CR 6, ¶ 4, 108 P.3d 1052, 1054. The Court's review of subsequent post-conviction applications is limited to errors which would have changed the outcome and claims of factual innocence. Id. 2005 OK CR 6, ¶ 6, 108 P.3d at 1054. This Court's rules also place time limits on the raising of issues in subsequent applications. See Rule 9.7(G)(3), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App (2023).[5]

 

¶17 These time limits and the post-conviction procedure act preserve the legal principle of finality of judgment. Sporn v. State, 2006 OK CR 30, ¶ 6, 139 P.3d 953, 954, Malicoat v. State, 2006 OK CR 25, ¶ 3, 137 P.3d 1234, 1235, Massaro v. United States, 538 U.S. 500, 504 (2003). This Court's rules and our case law, however, do not bar the raising of a claim of factual innocence at any stage. Slaughter, 2005 OK CR 6, ¶ 6, 108 P.3d at 1054. Innocence claims are the Post-Conviction Procedure Act's foundation. Id.

 

¶18 Claims of factual innocence must be supported by clear and convincing evidence. 22 O.S.Supp.2022, § 1089(D)(8)(b)(2); see Sawyer v. Whitley, 505 U.S. 333, 336 (1992). Factual innocence claims are the method to sidestep procedural bars in order to prevent the risk of a manifest miscarriage of justice. Cf. Herrera v. Collins, 506 U.S. 390, 404 (1993) (holding that bars to federal habeas corpus claims can be overcome by a claim of actual innocence). The evidence of factual innocence must be more than that which merely tends to discredit or impeach a witness. See Robinson v. State, 1997 OK CR 24, ¶ 7, 937 P.2d 101, 106; Moore v. State, 1995 OK CR 12¶ 6, 889 P.2d 1253, 1256; Smith v. State, 1992 OK CR 3, ¶ 15, 826 P.2d 615, 617-618. We weigh any evidence presented against the evidence as a whole, in a light most favorable to the State, to determine if Glossip has met this burden. See Slaughter, 2005 OK CR 6, ¶ 21, 108 P.3d at 1056. Glossip's actual innocence claim is raised in Proposition Four.

IV.

¶19 In order to prevail on his factual innocence claim, Glossip urges this Court to re-examine the previous claim of actual innocence along with what he calls new evidence. The items he relies upon in this new post-conviction application do not meet the threshold showing that Glossip is factually innocent.

¶20 Glossip first submits an affidavit from Paul Melton who was incarcerated with Justin Sneed after the murder. Melton previously provided an affidavit in 2016. The current affidavit is not substantially different from the one provided in 2016. Now, however, time has passed, and Melton's recollection is more detailed. Because the affidavit basically contains the same information available in previous applications, the matter is barred under the Post-Conviction Procedure Act. We are not convinced that the affidavit shows that Glossip is factually innocent. The affidavit merely provides impeachment evidence without showing that the outcome would be different.[6]

¶21 His second affidavit is from a medical doctor, Peter Speth, who attempts to discredit the medical examiner's report regarding Van Treese's cause of death. Dr. Speth provided a report to Glossip's attorneys in 2015. Glossip submitted medical affidavits attacking the medical examiner in his 2015 post-conviction application. This Court found, in 2015, that

This is a claim that could have been raised much earlier on direct appeal or in a timely original application through the exercise of reasonable diligence. Furthermore, we find that the facts underlying this claim are not sufficient when viewed in light of the evidence as a whole to show that no reasonable fact finder would have found Glossip guilty or would have rendered the penalty of death. Moreover, Glossip has not suffered a miscarriage of justice based on this claim.

Glossip v. State, No. PCD-2015-820, slip op. at 7 (Okl.Cr. Sept. 26, 2015).

¶22 There is nothing extraordinarily new in this affidavit; therefore, further review of this matter is barred under Oklahoma law. Moreover, the information is insufficient to cause this Court to believe that Glossip is factually innocent.

¶23 Clearly, the affidavits contain claims that were known, or could have been developed earlier with reasonable diligence. These affidavits do not provide the clear and convincing evidence that Glossip is factually innocent.

V.

¶24 Glossip claims in Propositions One and Two that the State withheld material, exculpatory evidence. Even if this claim overcomes procedural bar, the facts do not rise to the level of a Brady violation.[7] To establish a Brady violation, a defendant must show that the prosecution failed to disclose evidence that was favorable to him or exculpatory, and that the evidence was material. Brown v. State, 2018 OK CR 3, ¶ 102, 422 P.3d 155, 175. Material evidence must create a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. Id. 2018 OK CR 3, ¶ 103, 422 P.3d at 175. The mere possibility that an item of undisclosed information might have helped the defense or affected the outcome does not establish materiality. Id. 

¶25 Glossip claims that the State failed to disclose evidence of Justin Sneed's mental health treatment and that Sneed lied about his mental health treatment to the jury. Though the State in its response now concedes that this alleged false testimony combined with other unspecified cumulative errors warrant post-conviction relief, the concession alone cannot overcome the limitations on successive post-conviction review.[8] See 22 O.S.Supp.2022, § 1089(D)(8). The State's concession is not based in law or fact.

¶26 This issue is one that could have been presented previously, because the factual basis for the claim was ascertainable through the exercise of reasonable diligence, and the facts are not sufficient to establish by clear and convincing evidence that, but for the alleged error, no reasonable fact finder would have found the applicant guilty of the underlying offense or would have rendered the penalty of death.

¶27 Sneed, in 1997, underwent a competency examination by Dr. Edith King.[9] The State avers that this examination noted Sneed's lithium prescription. This report was available to previous counsel, so counsel knew or should have known about Sneed's mental health issues. Furthermore, Sneed testified at trial that he was given lithium while at the county jail prior to trial, but he didn't know why. Counsel did not question Sneed further on his mental health condition, which counsel knew about or should have known about. It is likely counsel did not want to inquire about Sneed's mental health due to the danger of showing that he was mentally vulnerable to Glossip's manipulation and control. Moreover, and controlling here, is the fact that this issue could have been and should have been raised, with reasonable diligence, much earlier than this fifth application for post-conviction relief.

¶28 The evidence, moreover, does not create a Napue[10] error. Defense counsel was aware or should have been aware that Sneed was taking lithium at the time of trial. This fact was not knowingly concealed by the prosecution. Sneed's previous evaluation and his trial testimony revealed that he was under the care of doctor who prescribed lithium. His testimony was not clearly false. Sneed was more than likely in denial of his mental health disorders, but counsel did not inquire further. Finally, this evidence is not material under the law. This known mental health treatment evidence does not create a reasonable probability that the result of the proceeding would have been different had Sneed's testimony regarding his use of lithium been further developed at trial.

¶29 Glossip next claims that the State failed to disclose that witness Kayla Pursley viewed a video tape recording of the Sinclair gas station taken the night of the murder. Kayla Pursley testified at trial that there were cameras at the station for the inside but not the outside. She testified that Sneed came in the station at around 2:00-2:30 a.m. No further inquiry was made about the cameras by either side during the trial. Arguably, the video tape was not disclosed to Glossip prior to trial, nor was it utilized at trial, and it has not been discovered as of this date. Pursley, prior to trial, possibly told prosecutors that she viewed the tape to see when Sneed came in the store.

¶30 Again, this issue could have been presented much earlier. Counsel should have known that there were cameras at the station in reading the trial transcript, and could have inquired about possible video tapes. Issues about missing tapes could have been raised much sooner. Glossip has waived this issue for review.

¶31 Obviously, the tape could have corroborated both Sneed's testimony and Pursley's testimony. Glossip offers mere speculation that the tape might have been exculpatory. He cannot show that the tape was material under the law.

¶32 Next, Glossip claims that the State failed to disclose details from witness statements that conflicted with other evidence. One such statement relates to the amount of money spent on repairs after the murder. One witness testified they spent $2,000.00-$3,000.00 for repairs and the motel was in disrepair because of Glossip's negligence rather than the lack of money. Another person "Bill Sunday" possibly told prosecutor Gary Ackley they spent $25,000.00 for repairs. The amount spent presents a conflict, but it does not help Glossip. The theory was that Glossip was negligent in his job, he expected to be fired, and he chose to have Van Treese killed instead of being fired. There was money for repairs, but Glossip didn't do the repairs. This contradiction hurts, rather than helps Glossip.

¶33 Glossip next cites to notes by prosecutor Connie Pope Smothermon discovered in box 8. Glossip speculates that the notes relate to items sold by him. Glossip's theory at trial was that the money he had was from selling some of his items, rather than money stolen from Van Treese in conjunction with the murder.

¶34 Glossip speculates that these notes regarding amounts of money were amounts learned from Cliff Everhart. Everhart testified that Glossip sold some items for around $250.00-$300.00. The notes do not clearly have an amount of money. There is no factual basis for this part of the claim. Moreover, Glossip has not shown that this information is material.

¶35 Next, Glossip raises a claim regarding the now missing Sinclair station video mentioned above. Glossip previously raised issues regarding this missing tape in Case No. PCD-2022-589. There was no dispute that a tape was retrieved from the Sinclair gas station, or that Sneed visited the station. Sneed testified that he was there before the murder. This claim is waived, as a claim regarding the missing tape could have been raised much earlier.

¶36 Glossip claims that he has now learned that witness Pursley possibly watched the video to confirm that she saw Sneed in the station at around 2:15 a.m. Glossip says this tape could have been helpful to the defense. That is far from being material. The mere possibility that an item of undisclosed information might have helped the defense or affected the outcome does not establish materiality. Brown, 2018 OK CR 3, ¶ 103, 422 P.3d at 175.

VI.

¶37 In Proposition Three Glossip claims that the prosecution tried to change Sneed's testimony to include the fact that in addition to beating Van Treese with a baseball bat, he also attempted to stab Van Treese.

¶38 Glossip admits that this claim was raised in a previous application, but he has new information to support this claim. Despite Glossip's argument, this claim is substantially the same as the previous claim presented in in Proposition Three in Case No. PCD-2022-819. This claim is barred under our rules.

VII.

¶39 Lastly, in Proposition Five, Glossip raises a cumulative error claim, combining the propositions in this application with issues raised in previous applications. Only claims argued in this application may be combined under this claim. Coddington v. State, 2011 OK CR 21, ¶ 22, 259 P.3d 833, 840. His cumulative error claim must be denied. A cumulative error claim is baseless when this Court fails to sustain any of the alleged errors raised. Id. 

¶40 Petitioner's reliance on Valdez v. State, 2002 OK CR 20, 46 P.3d 703, to overcome the procedural bars to claims waived or barred is, likewise, not persuasive. None of his claims convince this Court that these alleged errors have resulted in a miscarriage of justice. Valdez, 2002 OK CR 20, ¶ 28, 46 P.3d at 710-11.

VIII.

¶41 This Court has thoroughly examined Glossip's case from the initial direct appeal to this date. We have examined the trial transcripts, briefs, and every allegation Glossip has made since his conviction. Glossip has exhausted every avenue and we have found no legal or factual ground which would require relief in this case. Glossip's application for post-conviction relief is denied. We find, therefore, that neither an evidentiary hearing nor discovery is warranted in this case.

¶42 Further, because Glossip has not made the requisite showing of likely success and irreparable harm, he is not entitled to a stay of execution. We have denied the application for relief; therefore, his reasons for a stay are without merit. The Legislature has set forth parameters for this Court in setting execution dates and in issuing stays of execution.

Our authority to grant a stay of execution is limited by 22 O.S.2011, § 1001.1(C). The language of § 1001.1(C) is clear. This Court may grant a stay of execution only when: (1) there is an action pending in this Court; (2) the action challenges the death row inmate's conviction or death sentence; and (3) the death row inmate makes the requisite showings of likely success and irreparable harm.

Lockett v. State, 2014 OK CR 3, ¶ 3, 329 P.3d 755, 757. The joint request for a stay does not meet the standards of the statute. This Court has found no credible claims to prevent the carrying out of Glossip's sentence on the scheduled date.

CONCLUSION

¶43 After carefully reviewing Glossip's fifth application for post-conviction relief, we conclude that he is not entitled to relief. Accordingly, Glossip's application for post-conviction relief, and related matters are DENIED. The joint application for a stay of execution in Case No. D-2005-310 is DENIED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2023), the MANDATE is ORDERED issued upon the delivery and filing of this decision.

ATTORNEYS FOR PETITONER:

WARREN GOTCHER
GOTCHER & BEAVER
323 E CARL ALBERT AVENUE
McALESTER, OK 74501

DONALD R. KNIGHT
7852 S. ELATI STREET
SUITE 201
LITTLETON, CO 80120

JOSEPH J. PERKOVICH
PHILLIPS BLACK, INC.
P.O. BOX 4544
NEW YORK, NY 10163

AMY P. KNIGHT
KNIGHT LAW FIRM, P.C.
3849 E. BROADWAY BLVD # 288
TUCSON, AZ 85716

JOHN R. MILLS
PHILLIPS BLACK, INC.
1721 BROADWAY
SUITE 201
OAKLAND, CA 94612

JOSEPH L. WELLS
P.O. BOX 720597
OKLAHOMA CITY, OK 73172
ATTORNEY FOR AMICI

ATTORNEYS FOR RESPONDENT:

GENTNER F. DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
313 N.E. 21ST STREET
OKLAHOMA CITY, OK 73105

OPINION BY: LEWIS, J. 
HUDSON, V.P.J.: Concur
LUMPKIN, J.: Specially Concur
MUSSEMAN, J.: Concur
WINCHESTER, J.[11]: Concur

FOOTNOTES

[1] This was Glossip's retrial after this Court reversed his first Judgment and Sentence on legal grounds in Glossip v. State, 2001 OK CR 21, 29 P.3d 597.

[2] The jury did not find the second aggravating circumstance: the probability that Glossip will commit criminal acts of violence that would constitute a continuing threat to society.

[3] Glossip has been denied subsequent post-conviction relief in Oklahoma Court of Criminal Appeals case numbers PCD-2015-820, PCD-2022-589, and PCD-2022-819.

[4] It provides:

8. . . . if a subsequent application for post-conviction relief is filed after filing an original application, the Court of Criminal Appeals may not consider the merits of or grant relief based on the . . . subsequent application, unless:

a. the application contains claims and issues that have not been and could not have been presented previously in a timely original application or in a previously considered application filed under this section, because the legal basis for the claim was unavailable, or

b. (1) the application contains sufficient specific facts establishing that the current claims and issues have not and could not have been presented previously in a timely original application or in a previously considered application filed under this section, because the factual basis for the claim was unavailable as it was not ascertainable through the exercise of reasonable diligence on or before that date, and

c. (2) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for the alleged error, no reasonable fact finder would have found the applicant guilty of the underlying offense or would have rendered the penalty of death.

[5] These rules have the force of statute. 22 O.S.Supp.2022, § 1051(B).

[6] Melton never states in his affidavit that he is willing to testify if asked to do so.

[7] Brady v. Maryland, 373 U.S. 83 (1963). Oklahoma clearly follows the dictates of Brady and have stated,

Due process requires the State to disclose exculpatory and impeachment evidence favorable to an accused. See United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d [104] (1972), Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

Wright v. State, 2001 OK CR 19, ¶ 22, 30 P.3d 1148, 1152.

[8] The State's citation to Escobar v. Texas, 143 S.Ct. 557 (2023), is misleading at best. Texas confessed error in a brief before the United States Supreme Court; there is no statement that Texas confessed error before its own state courts as the Attorney General has done in its brief presented to this Court.

[9] This competency examination and lithium medication was mentioned in Glossip's brief filed in the appeal of his first conviction. See Oklahoma Court of Criminal Appeals Case No. D-1998-948.

[10] Napue v. Illinios, 360 U.S. 264, 269.

[11] Supreme Court Justice James R. Winchester sitting by special designation.

 

 

Lumpkin, J., Specially Concur:

¶1 Historians have documented that as some of this nation's founders contemplated its creation, John Adams wrote a series of essays as a member of the Massachusetts delegation to the First Continental Congress in 1775. This series, titled the "Novanglus" essays, includes Adams' conclusion that Aristotle, Livy, and Harrington defined a republic to be "a government of laws and not of men." The Court's opinion in this case comports with John Adams' finding, by following and applying the laws properly enacted by our Legislature and not depending on the various opinions voiced by men.

¶2 For over 20 years the facts, evidence, and law relating to this case have been reviewed in detail by judges and their staffs through every stage of appeal allowed under our Constitution. At no level of review has a court determined error in the trial proceeding of this Petitioner nor has there been a showing of actual innocence. As the Court's opinion notes, finality of judgments is a foundational principle of our system of justice. Petitioner has received every benefit offered by our system of justice and now his conviction and sentence are final. For these reasons, and the analysis set forth in the opinion, I concur in the judgment of the Court and in the denial of this application.

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
1992 OK CR 3, 826 P.2d 615, 
SMITH v. STATE
Discussed

 
1995 OK CR 12, 889 P.2d 1253, 
MOORE v. STATE
Discussed

 
2001 OK CR 19, 30 P.3d 1148, 72 OBJ 1998, 
WRIGHT v. STATE
Discussed

 
2001 OK CR 21, 29 P.3d 597, 72 OBJ 2146, 
GLOSSIP v. STATE
Discussed

 
2002 OK CR 20, 46 P.3d 703, 
VALDEZ v. STATE
Discussed at Length

 
2005 OK CR 6, 108 P.3d 1052, 
SLAUGHTER v. STATE
Discussed at Length

 
2006 OK CR 25, 137 P.3d 1234, 
MALICOAT v. STATE
Discussed

 
2006 OK CR 30, 139 P.3d 953, 
SPORN v. STATE
Discussed

 
2007 OK CR 12, 157 P.3d 143, 
GLOSSIP v. STATE
Discussed

 
2011 OK CR 21, 259 P.3d 833, 
CODDINGTON v. STATE
Discussed

 
2014 OK CR 3, 329 P.3d 755, 
LOCKETT v. STATE
Discussed

 
2018 OK CR 3, 422 P.3d 155, 
BROWN v. STATE
Discussed at Length

 
1997 OK CR 24, 937 P.2d 101, 
Robinson v. State
Discussed

Title 21. Crimes and Punishments

 
Cite
Name
Level

 
21 O.S. 701.7, 
Murder in the First Degree
Cited

Title 22. Criminal Procedure

 
Cite
Name
Level

 
22 O.S. 1001.1, 
Time for Execution of Judgment Imposing Death Sentence - Stay of Execution
Discussed

 
22 O.S. 1051, 
Right of Appeal - Review - Corrective Jurisdiction - Procedure - Scope of Review on Certiorari - Right to Appeal Denial of Immunity from Prosecution
Cited

 
22 O.S. 1089, 
Post-Conviction Relief for Death Penalty Conviction - Grounds for Appeal
Discussed at Length

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA