BRISCOE, Circuit Judge, concurring in part and dissenting in part.
 

 I concur in part and dissent in part. I agree with Part III of the majority's opinion, which rejects certain of Pavatt's ineffective assistance of counsel claims and affirms the denial of federal habeas relief on Pavatt's convictions for first degree murder and conspiracy to commit first degree murder. As I explain in greater detail below, however, I would add that there is no merit to any of Pavatt's ineffective assistance claims, or to his additional argument urging us to recognize an exception to the procedural bar that applies to most of his ineffective assistance of counsel claims.
 

 As for Part IV of the majority's opinion, I disagree with it in full. As I shall discuss in greater detail below, Pavatt's appellate brief in this case attempts to assert three distinct challenges to the jury's second-stage finding that the murder was especially heinous, atrocious or cruel (the HAC aggravating circumstance): (1) that the jury was not properly instructed regarding the HAC aggravating circumstance; (2) that the evidence presented at his sentencing proceeding was constitutionally insufficient to support the HAC aggravating circumstance; and (3) that the HAC aggravator, as applied in his case, is unconstitutionally vague in violation of the Eighth Amendment. Part IV of the majority's opinion only briefly touches on and does not ultimately resolve the first and0 second of these issues. Instead, Part IV focuses on and ultimately grants federal habeas relief on the basis of the Eighth Amendment claim. In doing so, however, Part IV ignores the undisputed fact that the Eighth Amendment claim is unexhausted because Pavatt never presented it to the OCCA. Part IV also ignores the undisputed fact that this court never granted Pavatt a certificate of appealability (COA) as to the Eighth Amendment claim. In short, Part IV grants Pavatt federal habeas relief on the basis of a claim that was never presented to or decided by the OCCA and that is not properly before this court.
 

 Thus, in sum, I would affirm the judgment of the district court denying Pavatt's petition for writ of habeas corpus in its entirety.
 

 I
 

 Pavatt asserts a number of claims of ineffective assistance of counsel and appellate
 counsel, including the claims of ineffective assistance of trial counsel that are addressed and rejected in Part III of the majority opinion. Although I agree with the majority that Pavatt is not entitled to federal habeas relief on the basis of these claims, I would conclude that only one of Pavatt's ineffective assistance claims is properly before us, and that the remainder are procedurally barred due to Pavatt's failure to present them to the OCCA "in compliance with relevant state procedural rules."
 
 Cone v. Bell
 
 ,
 
 556 U.S. 449
 
 , 465,
 
 129 S.Ct. 1769
 
 ,
 
 173 L.Ed.2d 701
 
 (2009).
 

 In his original application for state post-conviction relief, Pavatt asserted a host of claims alleging ineffective assistance of trial and appellate counsel. Only one of those claims, however, is now at issue in this appeal. That was a claim that his appellate attorneys failed to challenge on direct appeal the admissibility of a photograph of Rob Andrew taken prior to his death (State's Exhibit 219), and that the admission of that photograph "rendered ... Pavatt's trial fundamentally unfair, depriving him of the Due Process of Law, and unconstitutionally injected passion, prejudice, and other arbitrary factors into the sentencing proceeding." Original App. for Post-Conviction Relief at 54 (citations omitted). The OCCA denied relief on the claim, noting in part that it had rejected a similar claim in
 
 Marquez-Burrola v. State
 
 ,
 
 157 P.3d 749
 
 , 760 (Okla. Crim. App. 2007).
 
 Pavatt v. State
 
 , No. PCD-2004-25 at 6 n.6 (Okla. Crim. App. Apr. 11, 2008). The OCCA also stated that this claim was "barred by
 
 res judicata
 
 ."
 
 Id.
 
 at 6. Presumably, this was a reference to Pavatt's argument on direct appeal that the trial court erred in admitting gruesome photographs of Rob Andrew at the crime scene and his accompanying request that the OCCA review the premortem photographs of Rob Andrew. In any event, respondent does not argue that the claim is procedurally barred for purposes of federal habeas review.
 

 The district court reviewed the claim on the merits and concluded that Pavatt had failed to demonstrate that the OCCA's decision was contrary to or an unreasonable application of
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 ,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984). ROA, Vol. 3 at 1125 (ECF No. 91 at 77). More specifically, the district court concluded "it [wa]s clear that based on the case cited by the OCCA in its denial of [Pavatt]'s claim,
 
 Marquez-Burrola
 
 , as well as other cases decided by the OCCA prior to [Pavatt]'s appeal, that [Pavatt] would not have prevailed on appeal had the claim been raised."
 

 Id.
 

 (citations omitted).
 

 I agree with the district court. In
 
 Marquez-Burrola
 
 , the OCCA considered and rejected a challenge to the constitutionality of § 2403 of the Oklahoma Evidence Code, which states, in pertinent part, that "an appropriate photograph of the victim while alive shall be admissible evidence when offered by the district attorney to show the general appearance and condition of the victim while alive."
 
 Okla. Stat. tit. 12, § 2403
 
 2016 );
 
 see
 

 Marquez-Burrola
 
 ,
 
 157 P.3d at 760
 
 . The OCCA in that case also rejected the defendant's argument that the trial court abused its discretion by admitting, pursuant to § 2403, a single, premortem photograph of the victim.
 

 Id.
 

 at 760-61
 
 . Notably, the premortem photograph of Rob Andrew was admitted at Pavatt's trial without objection pursuant to § 2403, and I see nothing about that photograph or the facts of Pavatt's trial that would distinguish it from
 
 Marquez-Burrola
 
 . Further, the OCCA itself explicitly stated that, in light of
 
 Marquez-Burrola
 
 , it would not have granted relief to Pavatt had he challenged the admission of Exhibit 219 on direct appeal. Consequently, Pavatt has failed to establish that he was prejudiced
 by the failure of his appellate counsel to raise the issue on direct appeal.
 

 All of the remaining ineffective assistance claims asserted by Pavatt in this appeal-trial counsel's failure to prevent the admission of pervasive victim-impact evidence in both stages of trial (other than Exhibit 219), trial counsel's failure to investigate and present a compelling mitigation case, and appellate counsel's failure to assert these claims of ineffective assistance on direct appeal-were first presented by Pavatt to the OCCA in his second application for state post-conviction relief. The OCCA concluded that these claims were procedurally barred under the provisions of the Oklahoma Post-Conviction Procedure Act,
 
 Okla. Stat. tit. 22, §§ 1080
 

 et seq
 
 . In reaching this conclusion, the OCCA noted that, under that Act, "[c]laims which could have been raised on direct appeal, but were not, are generally considered waived."
 
 Pavatt v. State
 
 , No. PCD-2009-777 at 2 (Okla. Crim. App. Feb. 2, 2010). Further, the OCCA noted that it could "not consider the merits of any claim made in a subsequent application for postconviction relief, unless (1) the legal basis for that claim was previously unavailable, or (2) the facts supporting the claim were not previously ascertainable through the exercise of reasonable diligence."
 

 Id.
 

 at 2-3
 
 . The OCCA determined that all of Pavatt's ineffective assistance claims could have been raised at an earlier time, and it in turn concluded that it was "barred by the provisions of the Post-Conviction Procedure Act from considering these arguments."
 

 Id.
 

 at 7
 
 .
 

 Despite the OCCA's ruling, Pavatt argues that we should review his claims
 
 de novo
 
 for two reasons. First, he contends that "[t]he OCCA did not clearly impose a procedural bar of these claims, but instead stated the 'current arguments merely modify or expand the claims made, and rejected, in prior proceedings.' " Aplt. Br. at 50 (quoting
 
 Pavatt
 
 , No. PCD-2009-777 at 4). This argument makes little sense when one recalls that the ineffective assistance of counsel claims he now asserts were first raised in his second application for state post-conviction relief. Further, as discussed above and as Pavatt ultimately concedes in a related footnote, the OCCA quite clearly concluded that these claims were procedurally barred under Oklahoma's Post-Conviction Procedure Act.
 

 Id.
 

 at 50-51 n.14.
 

 That leads to Pavatt's second argument: "Even if this Court determines the OCCA imposed a procedural bar, such a bar is not without exception. Post-conviction counsel's ineffectiveness in not fully challenging the failures of prior counsel to object to the inadmissible sympathy evidence is the 'cause' that excuses any default."
 

 Id.
 

 at 50-51
 
 (citations omitted). In other words, Pavatt argues that the ineffectiveness of the attorney who represented him in filing his original application for post-conviction relief establishes the "cause" for his failure to comply with Oklahoma's procedural requirements.
 

 In support of this argument, Pavatt relies on the Supreme Court's decisions in
 
 Martinez v. Ryan
 
 ,
 
 566 U.S. 1
 
 ,
 
 132 S.Ct. 1309
 
 ,
 
 182 L.Ed.2d 272
 
 (2012) and
 
 Trevino v. Thaler
 
 ,
 
 569 U.S. 413
 
 ,
 
 133 S.Ct. 1911
 
 ,
 
 185 L.Ed.2d 1044
 
 (2013). Aplt. Br. at 51. In
 
 Martinez
 
 , the Supreme Court held that if,
 

 under state law, claims of ineffective assistance of trial counsel
 
 must
 
 be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.
 

 Id.
 
 at 1320 (emphasis added).
 

 In
 
 Trevino
 
 , the Supreme Court explained that, in determining whether the
 
 Martinez
 
 exception to
 
 Coleman v. Thompson
 
 ,
 
 501 U.S. 722
 
 , 729-30, 753-54,
 
 111 S.Ct. 2546
 
 ,
 
 115 L.Ed.2d 640
 
 (1991) (holding that a defendant's state-law procedural default ordinarily prevents a federal habeas court from considering the defendant's federal constitutional claim, and that an attorney's errors in a post-conviction proceeding do not qualify as cause for such a default), applies in a particular case, four requirements must be met:
 

 (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceedings was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law
 
 requires
 
 that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."
 

 133 S.Ct. at 1918
 
 (alteration in original) (quoting
 
 Martinez
 
 ,
 
 132 S.Ct. at 1318-19
 
 , 1320-21 ). The Court in
 
 Trevino
 
 ultimately extended the rule in
 
 Martinez
 
 to circumstances in which state law does not expressly require claims of ineffective assistance of trial counsel to be brought in collateral proceedings, but, by way of its "structure and design ... make[s] it virtually impossible for an ineffective assistance claim to be presented on direct review."
 
 Id.
 
 at 1915 (internal quotation marks omitted).
 

 Pavatt argues that the rules outlined in
 
 Martinez
 
 and
 
 Trevino
 
 should be applied in his case because (a) he was represented at trial and on direct appeal by the same attorney, (b) consequently, his original application for post-conviction relief was his first real opportunity to assert ineffective assistance of trial counsel claims, and (c) the attorney who represented him in filing his original application for post-conviction relief was ineffective for failing to raise these claims of ineffective assistance of trial counsel and appellate counsel.
 

 I disagree.
 
 Martinez
 
 and
 
 Trevino
 
 are distinguishable because, in both of those cases, the Supreme Court focused on whether the "structure and design" of the state system at issue, i.e., what the Supreme Court in
 
 Trevino
 
 characterized as the state's "procedural regime,"
 
 133 S.Ct. at 1915
 
 , expressly or effectively prevented the petitioner from raising his or her ineffective assistance claim for the first time until state postconviction proceedings. Notably, in
 
 Fairchild v. Trammell
 
 ,
 
 784 F.3d 702
 
 , 721 (10th Cir. 2015), we differentiated Oklahoma's procedural regime from the state systems that were at issue in
 
 Martinez
 
 and
 
 Trevino
 
 . In particular, we noted that "Oklahoma provides a reasonable time to investigate a claim of ineffective assistance before raising it on direct appeal" and that, under Oklahoma law, "[a] claim of ineffective assistance can be raised with the opening brief on [direct] appeal."
 
 [1]
 

 Id.
 

 Thus, consistent with our holding in
 
 Fairchild
 
 , I would conclude that neither
 
 Martinez
 
 nor
 
 Trevino
 
 allow us to bypass the OCCA's procedural bar ruling and review Pavatt's ineffective assistance claims on the merits. To hold otherwise would be to adopt an entirely new, and potentially much broader, rule than was announced in
 
 Martinez
 
 and
 
 Trevino
 
 .
 

 II
 

 As noted, Pavatt also asserts three distinct challenges to the HAC aggravating
 circumstance found by the jury: (1) that the jury in his case was not properly instructed regarding the HAC aggravating circumstance; (2) that the evidence presented at his sentencing proceeding was constitutionally insufficient to support the HAC aggravating circumstance; and (3) that the HAC aggravator, as applied by the Oklahoma Court of Criminal Appeals (OCCA), is unconstitutionally vague in violation of the Eighth Amendment. As discussed below, I conclude that all of these challenges lack merit, and that we must affirm the district court's denial of federal habeas relief with respect to those claims.
 

 A
 

 The Oklahoma legislature has outlined eight aggravating circumstances that may be found by a jury in the sentencing phase of a capital trial.
 
 See
 

 Okla. Stat. tit. 21, § 701.12
 
 . Included among those is the HAC aggravating circumstance.
 

 Id.
 

 § 701.12(4) ("The murder was especially heinous, atrocious, or cruel.").
 

 In 1988, the Supreme Court addressed the constitutionality of Oklahoma's HAC aggravating circumstance in
 
 Maynard v. Cartwright
 
 ,
 
 486 U.S. 356
 
 ,
 
 108 S.Ct. 1853
 
 ,
 
 100 L.Ed.2d 372
 
 (1988). The claim in that case, which was filed by an Oklahoma capital defendant, was that Oklahoma's HAC aggravator was unconstitutionally vague and overbroad. The Supreme Court unanimously agreed and held that the statutory language of the HAC aggravator, standing alone, failed to give a jury adequate guidance.
 

 Id.
 

 at 363-64
 
 ,
 
 108 S.Ct. 1853
 
 . "[A]n ordinary person," the Court concluded, "could honestly believe that every unjustified, intentional taking of human life is 'especially heinous.' "
 

 Id.
 

 Notably, while
 
 Maynard
 
 was pending before the Supreme Court, the OCCA expressly "restricted the 'heinous, atrocious, or cruel' aggravating circumstance to those murders in which torture or serious physical abuse [wa]s present."
 

 Id.
 

 at 365
 
 ,
 
 108 S.Ct. 1853
 
 (citing
 
 Stouffer v. State
 
 ,
 
 742 P.2d 562
 
 (Okla. Crim. App. 1987) ). More specifically, the OCCA in
 
 Stouffer
 
 "identified two kinds of cases in which 'torture or serious physical abuse' [wa]s present: those characterized by the infliction of 'great physical anguish' and those characterized by the infliction of 'extreme mental cruelty.' "
 
 Medlock v. Ward
 
 ,
 
 200 F.3d 1314
 
 , 1324 (10th Cir. 2000) (Lucero, J., concurring). "In the mental cruelty context, the OCCA ... emphasized that the torture required for finding the 'heinous, atrocious, or cruel' aggravator must produce mental anguish in addition to that which of necessity accompanies the underlying killing."
 

 Id.
 

 (internal quotation marks omitted). And, with respect to the physical anguish branch of its test, the OCCA held that, "[a]bsent evidence of conscious physical suffering by the victim prior to death, the required torture or serious physical abuse standard is not met."
 
 Battenfield v. State
 
 ,
 
 816 P.2d 555
 
 , 565 (Okla. Crim. App. 1991).
 

 In addition to the restrictions outlined in
 
 Stouffer
 
 , the OCCA has since indicated that the HAC aggravator "contemplates a two-step analysis."
 
 Nuckols v. State
 
 ,
 
 805 P.2d 672
 
 , 674 (Okla. Crim. App. 1991). The first step of this analysis, the OCCA has stated, requires the jury to determine whether the death of the victim was preceded by torture or serious physical abuse.
 
 Id.
 
 "Once this foundational assessment is made," the OCCA has stated, "then the jury may apply the definitions given to them ... to measure whether or not the crime can be considered to have been heinous, atrocious or cruel."
 

 Id.
 

 In
 
 DeRosa v. State
 
 ,
 
 89 P.3d 1124
 
 , 1156 (Okla. Crim. App. 2004), the OCCA officially incorporated this two-step analysis into its uniform jury instructions. More specifically, the OCCA outlined a jury instruction
 defining the HAC aggravator and directed that this instruction was to "replace the current version of OUJI-CR(2d) 4-73 and that it shall be used in all future capital murder trials in which the" HAC aggravator is alleged. The instruction read as follows:
 

 The State has alleged that the murder was "especially heinous, atrocious, or cruel." This aggravating circumstance is not established unless the State proves beyond a reasonable doubt:
 

 First
 
 , that the murder was preceded by either torture of the victim or serious physical abuse of the victim; and
 

 Second
 
 , that the facts and circumstances of this case establish that the murder was heinous, atrocious, or cruel.
 

 You are instructed that the term "torture" means the infliction of either great physical anguish or extreme mental cruelty. You are further instructed that you cannot find that "serious physical abuse" or "great physical anguish" occurred unless you also find that the victim experienced conscious physical suffering prior to his/her death.
 

 In addition, you are instructed that the term "heinous" means extremely wicked or shockingly evil; the term "atrocious" means outrageously wicked and vile; and the term "cruel" means pitiless, designed to inflict a high degree of pain, or utter indifference to or enjoyment of the suffering of others.
 

 Id.
 

 The OCCA emphasized that "[t]his instruction does not change any of the legal requirements of the 'heinous, atrocious, or cruel' aggravating circumstance as it has existed up until this time."
 
 Id.
 
 "Rather," the OCCA noted, "it is intended to more fully inform the jury regarding the findings that must be made in order to properly apply the aggravator and to ensure that a jury determination is made regarding each of these findings."
 

 Id.
 

 B
 

 In the first of his challenges to the HAC aggravating circumstance found by the jury in his case, Pavatt contends that the state trial court's instructions to the jury regarding the HAC aggravating circumstance failed to inform them adequately that they must find "conscious physical suffering" before concluding that the murder was "especially heinous, atrocious, or cruel."
 

 Facts relevant to this claim
 

 Prior to trial, Pavatt filed an objection "to the pattern verdict form, OUJI-CR 2d 4-84, on the grounds the special findings,
 
 i.e.
 
 , the aggravating circumstances, [we]re ill-defined, vague and d[id] not check the unbridled discretion of the sentencer." State R. at 1286. Pavatt subsequently filed an objection to the standard instruction and verdict form on the HAC aggravating circumstance "on the grounds that [they were] unconstitutional" in light of the Supreme Court's decision in
 
 Maynard
 
 .
 
 Id.
 
 at 1471.
 

 The state trial court overruled Pavatt's objections and, at the conclusion of the second-stage proceedings, gave the jury the following instruction regarding the HAC aggravating circumstance:
 

 Instruction Number 5
 

 As used in these instructions, the term "heinous" means extremely wicked or shockingly evil; "atrocious" means outrageously wicked and vile; "cruel" means pitiless, or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the sufferings of others.
 

 The phrase "especially heinous, atrocious, or cruel" is directed to those crimes where the death of the victim
 was preceded by torture of the victim or serious physical abuse.
 

 Id.
 
 at 2052. The second-stage verdict form simply asked the jury to check whether or not they found the existence of each of the alleged aggravating circumstances.
 
 Id.
 
 at 2063. The verdict form did not otherwise explain or attempt to define the HAC aggravating circumstance.
 
 Id.
 

 Pavatt's presentation of the issue to the OCCA
 

 Although Pavatt argued on direct appeal that the evidence presented at trial was insufficient to support the HAC aggravating circumstance, he did not challenge on direct appeal the adequacy of the HAC instruction or the verdict form. Nor did he raise the issue in his initial application for post-conviction relief. Instead, Pavatt waited until he filed his second application for post-conviction relief to raise the issue. In that application, Pavatt argued that the state trial court violated his constitutional rights by failing to provide an adequate instruction that informed the jury that it must find conscious physical suffering beyond a reasonable doubt before concluding that the murder was especially heinous, atrocious, or cruel.
 

 The OCCA's resolution of the claim
 

 In its opinion denying Pavatt's second application for post-conviction relief, the OCCA concluded that this claim was procedurally barred: "Because this argument is based on the trial record, it could have been made in prior proceedings, and may not be considered now."
 
 Pavatt
 
 , No. PCD-2009-777 at 5 (citing Okla. Stat. title 22, § 1089(D)(8) ). In a related footnote, the OCCA also stated:
 

 In any event, we have rejected the same argument several times in the past. [Pavatt] essentially asks this Court to retroactively require an instruction that we promulgated-after Petitioner's conviction-in
 
 DeRosa v. State
 
 ,
 
 2004 OK CR 19
 
 , ¶¶ 91-97,
 
 89 P.3d 1124
 
 , 1154-57. That instruction elaborates on the meaning of "heinous, atrocious, or cruel," and the relevant Uniform Jury Instruction already in existence (No. 4-73) was amended a year later.
 
 DeRosa
 
 was handed down several months after [Pavatt]'s trial.
 
 DeRosa
 
 does not hold that the Uniform Jury Instruction on this issue, being used at the time of DeRosa's and [Pavatt]'s trials, was materially deficient.
 
 DeRosa
 
 ,
 
 2004 OK CR 19
 
 , ¶ 97,
 
 89 P.3d at 1156
 
 ("This opinion should not be interpreted as a ruling that the former uniform instruction was legally inaccurate or inadequate"). This same attack on the pre-
 
 DeRosa
 
 version of OUJI-CR (2nd) No. 4-73 has been rejected several times by this Court.
 
 Jackson v. State
 
 ,
 
 2006 OK CR 45
 
 , ¶¶ 36-38,
 
 146 P.3d 1149
 
 , 1161-63 ;
 
 Browning v. State
 
 ,
 
 2006 OK CR 8
 
 , ¶¶ 52-56,
 
 134 P.3d 816
 
 , 843-45 ;
 
 Rojem v. State
 
 ,
 
 2006 OK CR 7
 
 , ¶¶ 68-73,
 
 130 P.3d 287
 
 , 300-01.
 

 Id.
 

 at 5 n.5.
 

 The district court's procedural bar ruling
 

 The district court in this case concluded that Pavatt's challenge to the state trial court's HAC instruction was "barred from federal review." ROA, Vol. 3 at 1138. In support, the district court stated that "[t]he Tenth Circuit has repeatedly recognized the application of a procedural bar to claims which could have been raised in an initial postconviction application but were not."
 
 Id.
 
 at 1079. The district court also concluded that "the OCCA's procedural bar here [wa]s adequate and independent."
 
 Id.
 
 at 1080. Lastly, the district court concluded that Pavatt had "not made any showing of cause and prejudice to excuse his default of th[is] claim[ ]," nor had he shown "that a fundamental miscarriage of
 justice w[ould] occur if the claim [wa]s not heard."
 
 Id.
 
 at 1081-82.
 

 Pavatt's challenge to the district court's procedural bar ruling
 

 Pavatt now contends that "[t]he district court erred in finding this claim procedurally barred from federal review." Aplt. Br. at 41. In support, Pavatt asserts that "
 
 Valdez v. State
 
 ,
 
 46 P.3d 703
 
 (Okla. Crim. App. 2002) gives the OCCA the option to permit consideration on the merits 'when an error complained of has resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.' " Aplt. Br. at 41 (quoting
 
 Valdez
 
 ,
 
 46 P.3d at
 
 710 ). "The merits inquiry," Pavatt asserts, "is thus part of the default consideration, and therefore, lacks independence as in
 
 Ake v. Oklahoma
 
 ,
 
 470 U.S. 68
 
 , 74-75,
 
 105 S.Ct. 1087
 
 ,
 
 84 L.Ed.2d 53
 
 (1985)." Aplt. Br. at 41.
 

 "The doctrine of procedural default prevents a federal court from reviewing 'the merits of a claim-including constitutional claims-that a state court declined to hear because the prisoner failed to abide by a state procedural rule.' "
 
 Williams v. Trammell
 
 ,
 
 782 F.3d 1184
 
 , 1212 (10th Cir. 2015) (quoting
 
 Martinez v. Ryan
 
 ,
 
 566 U.S. 1
 
 , 9,
 
 132 S.Ct. 1309
 
 ,
 
 182 L.Ed.2d 272
 
 (2012) ). "In order to bar federal review, a state procedural rule must be adequate to support the judgment and independent from federal law."
 
 Banks v. Workman
 
 ,
 
 692 F.3d 1133
 
 , 1145 (10th Cir. 2012). "These dual requirements seek to ensure state rules are not employed to defeat federal court review of constitutional rights."
 
 Id.
 
 "To satisfy the adequacy element, a state procedural rule must be strictly or regularly followed and applied evenhandedly to all similar claims."
 

 Id.
 

 (internal quotation marks omitted) (citation omitted). This court "ha[s] repeatedly held that Oklahoma's procedural default rule meets the adequacy requirement."
 
 Id.
 
 "A state procedural rule is independent if it relies on state law, rather than federal law, as the basis for the decision."
 

 Id.
 

 (internal quotation marks omitted) (citation omitted).
 

 "In
 
 Ake v. Oklahoma
 
 , ... the OCCA had held that [defendant] Ake had waived his claims that he was entitled to a court-appointed psychiatrist to assist him in an insanity defense because he had not renewed his request for a psychiatrist in a new-trial motion."
 
 Black v. Workman
 
 ,
 
 682 F.3d 880
 
 , 918 (10th Cir. 2012). "But under Oklahoma law there was no procedural bar if the alleged error was 'fundamental trial error'; and federal constitutional error was considered an error of that type."
 

 Id.
 

 (quoting
 
 Ake
 
 ,
 
 470 U.S. at 74-75
 
 ,
 
 105 S.Ct. 1087
 
 ). "Thus, the OCCA could not apply the waiver rule without first addressing the federal constitutional error."
 
 Id.
 
 "The Supreme Court concluded that the state waiver rule was therefore not an independent state ground for barring review."
 

 Id.
 

 In Pavatt's case, as in
 
 Banks
 
 , the OCCA based its denial "upon the state procedural rule in § 1089(D)(8)."
 
 692 F.3d at 1145
 
 . "Because § 1089 is purely a state law rule, we have held that Oklahoma decisions resting entirely upon § 1089(D)(8) are independent."
 

 Id.
 

 But Pavatt, relying on
 
 Valdez
 
 and parroting other Oklahoma capital defendants who have mounted similar challenges, essentially argues that the OCCA's reliance on § 1089(D)(8)"does not preclude merits review because the state bar is not independent of federal law."
 
 Fairchild
 
 ,
 
 784 F.3d at 719
 
 . More specifically, Pavatt "is asserting that the OCCA will not impose a procedural bar [pursuant to § 1089(D)(8) ] unless it first determines that any federal claims lack merit,"
 

 id.
 

 ,
 
 and thus the OCCA "sometimes forgives noncompliance with the bar on successive post-conviction applications."
 
 Williams
 
 ,
 
 782 F.3d at 1213
 
 .
 

 As we have noted, however, "the
 
 Valdez
 
 exception only applies in cases involving an exceptional circumstance, and it is insufficient to overcome Oklahoma's regular and consistent application of its procedural-bar rule in the vast majority of cases."
 
 [2]
 

 Id.
 

 (internal quotation marks omitted) (citations omitted). In this case, Pavatt's challenge to the HAC jury instruction is far from exceptional: it is a claim that was readily apparent from the trial record and that could and arguably should have been raised on direct appeal. Moreover, although the OCCA opined in a footnote that there was no merit to Pavatt's claim, the clear and unequivocal basis for its denial of his claim was procedural bar under § 1089(D)(8).
 
 See
 

 Cole
 
 , 755 F.3d at 1158-59 (acknowledging and applying the OCCA's procedural bar ruling, even though the OCCA, on an alternative basis, briefly addressed and rejected the merits of the petitioner's claim);
 
 Thacker v. Workman
 
 ,
 
 678 F.3d 820
 
 , 834 n.5 (10th Cir. 2012) (same). I therefore agree with the district court that the claim is procedurally barred.
 

 The merits of Pavatt's claim
 

 Even if we were to assume that the claim was not procedurally barred, it cannot provide Pavatt with a valid basis for federal habeas relief. In
 
 Workman v. Mullin
 
 ,
 
 342 F.3d 1100
 
 (10th Cir. 2003) and
 
 Wilson v. Sirmons
 
 ,
 
 536 F.3d 1064
 
 (10th Cir. 2008), we considered HAC jury instructions identical to the one utilized in Pavatt's case and rejected claims identical to the one now asserted by Pavatt. In doing so, we concluded that the language of the instructions was sufficient to narrow the jury's discretion, as required by Supreme Court precedent.
 
 Workman
 
 ,
 
 342 F.3d at
 
 1116 ;
 
 Wilson
 
 ,
 
 536 F.3d at 1108
 
 . We also noted in
 
 Wilson
 
 that "[e]ven if the jury instruction did not sufficiently narrow the jury's discretion," the OCCA could "also perform this narrowing function on review" and actually did so.
 
 536 F.3d at 1108
 
 . The same holds true in Pavatt's case.
 

 C
 

 In the second of his challenges to the HAC aggravating circumstance, Pavatt argues that the evidence presented at the sentencing phase of his trial was constitutionally insufficient to support the HAC aggravating circumstance. In support of his challenge to the constitutional sufficiency of the evidence supporting the HAC aggravator, Pavatt offers his view of the evidence:
 

 Rob Andrew was shot twice with a shotgun at relatively close range. There was no gratuitous violence. There was no torture. There was no anguish or suffering beyond that which necessarily accompanied the underlying killing. The two shotgun blasts were both independently fatal. Pellets from both shots hit vital internal organs. Rob could not have remained conscious for more than a few moments, before going into shock and quickly bleeding to death. Additionally, the combination of both shots would have sped up the bleeding, causing Rob to die where he fell. If Rob Andrew's homicide was "heinous, atrocious, or cruel," then any murder in which the victim does not die instantly satisfies this factor.
 

 Aplt. Br. at 21-22.
 

 Pavatt's presentation of the claim to the OCCA
 

 Pavatt first challenged the sufficiency of the evidence supporting the HAC aggravator
 in his direct appeal. The entirety of his argument was as follows:
 

 There was insufficient evidence to support the heinous, atrocious or cruel aggravating circumstance.
 
 See
 

 Thomas v. Gibson
 
 ,
 
 218 F.3d 1213
 
 (10th Cir. 2000) (Evidence was insufficient to support heinous, atrocious or cruel aggravating circumstance);
 
 Donaldson v. State
 
 ,
 
 722 So.2d 177
 
 (Fla. 1998) ;
 
 Jones v. Gibson
 
 ,
 
 206 F.3d 946
 
 , 953 (10th Cir. 2000) ("We agree with petitioner and the federal district court that the record does not support the Oklahoma Court of Criminal Appeals' finding that the victim pleaded for his life").
 

 The evidence does not support the fact that the murder was "especially" heinous, atrocious or cruel. As defense counsel said during closing argument, "To some degree I suppose all homicides are heinous, atrocious or cruel. I think that's the reason why the legislature has inflicted the term especially to that phrase."
 

 Interestingly, the State attempts to prove the existence of the aggravating circumstance on the basis of the information provided by Brenda Andrew in her 911 call to the police. (Tr. 3763) The medical examiner's testimony was that either of the two wounds could have been fatal. Death occurred in a matter of minutes. The medical examiner could not tell how long Mr. Andrew was conscious. (Tr. 3764)
 

 Direct Appeal Br. at 47.
 

 The OCCA rejected this claim on the merits, stating as follows:
 

 In Propositions 14 and 15, Appellant challenges the sufficiency of the evidence to support the two aggravating circumstances alleged by the State as warranting the death penalty. Such challenges are reviewed under the same standard as challenges to the evidence supporting a criminal conviction. We consider the evidence in a light most favorable to the State, and determine whether any rational juror could have found the existence of the challenged aggravating circumstance beyond a reasonable doubt.
 
 DeRosa
 
 ,
 
 2004 OK CR 19
 
 at ¶ 85,
 
 89 P.3d at
 
 1153 ;
 
 Lockett v. State
 
 ,
 
 2002 OK CR 30
 
 , ¶ 39,
 
 53 P.3d 418
 
 , 430.
 

 In Proposition 14, Appellant claims the evidence was insufficient to support the jury's finding that the murder of Rob Andrew was "especially heinous, atrocious, or cruel." To establish this aggravator, the State must present evidence from which the jury could find that the victim's death was preceded by either serious physical abuse or torture. Evidence that the victim was conscious and aware of the attack supports a finding of torture.
 
 Davis v. State
 
 ,
 
 2004 OK CR 36
 
 , ¶ 39,
 
 103 P.3d 70
 
 , 81 ;
 
 Black v. State
 
 ,
 
 2001 OK CR 5
 
 , ¶ 79,
 
 21 P.3d 1047
 
 , 1074 (evidence that victim consciously suffered pain during and after stabbing was sufficient to support this aggravating circumstance);
 
 Le
 
 ,
 
 1997 OK CR 55
 
 at ¶ 35, 947 P.2d at 550 ;
 
 Romano v. State
 
 ,
 
 1995 OK CR 74
 
 , ¶ 70,
 
 909 P.2d 92
 
 , 118 ;
 
 Berget v. State
 
 ,
 
 1991 OK CR 121
 
 , ¶ 31,
 
 824 P.2d 364
 
 , 373. Our evaluation is not a mechanistic exercise. As we stated in
 
 Robinson v. State
 
 ,
 
 1995 OK CR 25
 
 , ¶ 36,
 
 900 P.2d 389
 
 , 401 :
 

 As much as we would like to point to specific, uniform criteria, applicable to all murder cases, which would make the application of the "heinous, atrocious or cruel" aggravator a mechanical procedure, that is simply not possible. Rather, the examination of the facts of each and every case is necessary in determining whether the aggravator was proved.
 

 Unfortunately, no two cases present identical fact scenarios for our consideration,
 therefore the particulars of each case become the focus of our inquiry, as opposed to one case's similarity to another, in resolving a sufficiency of the evidence claim supporting the heinous, atrocious or cruel aggravator.
 

 The evidence presented at trial showed that Rob Andrew suffered numerous wounds resulting from two shotgun blasts, which damaged his internal organs. The medical examiner testified that either wound would have caused sufficient blood loss to be independently fatal, but that death was not instantaneous. When emergency personnel arrived, Andrew was still clutching a trash bag full of empty aluminum cans, which reasonably suggested that he either tried to ward off his attacker or shield himself from being shot. Brenda Andrew called 911 twice after the shooting; together, the two calls spanned several minutes. During the second call, she claimed that her husband was still conscious and attempting to talk to her as he lay bleeding to death on the garage floor. All of these facts tend to show that Rob Andrew suffered serious physical abuse, and was conscious of the fatal attack for several minutes.
 
 See
 

 Ledbetter v. State
 
 ,
 
 1997 OK CR 5
 
 , ¶ 53,
 
 933 P.2d 880
 
 , 896 (evidence that murder victim was likely aware that she was about to be assaulted because defendant had attempted to kill her one week earlier, that she tried to defend herself from the fatal attack, and that she attempted to communicate with a neighbor after the attack was sufficient to show that the murder was especially heinous, atrocious or cruel).
 

 After finding that the murder was accompanied by torture or serious physical abuse, the jury may also consider the attitude of the killer and the pitiless nature of the crime.
 
 Lott
 
 ,
 
 2004 OK CR 27
 
 at ¶ 172, 98 P.3d at 358 ;
 
 Phillips v. State
 
 ,
 
 1999 OK CR 38
 
 , ¶ 80,
 
 989 P.2d 1017
 
 , 1039. That the victim was acquainted with his killers is a fact relevant to whether the murder was especially heinous, atrocious, or cruel. In finding the murder in
 
 Boutwell v. State
 
 ,
 
 1983 OK CR 17
 
 , ¶ 40,
 
 659 P.2d 322
 
 , 329 to be especially heinous, atrocious, or cruel, this Court observed:
 

 In this case the killing was merciless. The robbers planned well in advance to take the victim's life. Even more abhorrent and indicative of cold pitilessness is the fact that the appellant and the victim knew each other.
 

 We find the situation in the present case even more pitiless. Rob Andrew correctly suspected his wife of having an affair with a man he trusted as his insurance agent. He correctly suspected his wife and her lover of trying to wrest control of his life insurance away from him. He correctly suspected his wife and her lover of attempting to kill him several weeks before by severing the brake lines on his car. He confided in others that he was in fear of his life. Having separated from his wife, Rob Andrew was murdered as he returned to the family home to pick up his children for the Thanksgiving holiday. From the evidence, a rational juror could have concluded, beyond a reasonable doubt, that Rob Andrew had time to reflect on this cruel state of affairs before he died. The evidence supported this aggravating circumstance, and this proposition is denied.
 

 Pavatt v. State of Oklahoma (Pavatt I)
 
 ,
 
 159 P.3d 272
 
 , 294-95 (Okla. Crim. App. 2007) (internal paragraph numbers omitted).
 

 Standard of review
 

 Because Pavatt's challenge to the sufficiency of evidence supporting the HAC aggravator was previously addressed and
 rejected on the merits by the OCCA, our scope of review is circumscribed by
 
 28 U.S.C. § 2254
 
 (d).
 
 See
 

 Montgomery v. Louisiana
 
 , --- U.S. ----,
 
 136 S.Ct. 718
 
 , 740,
 
 193 L.Ed.2d 599
 
 (2016) ("federal court[s] ha[ve] no inherent habeas corpus power, but only that which is conferred (and limited) by statute.");
 
 Harrington v. Richter
 
 ,
 
 562 U.S. 86
 
 , 92,
 
 131 S.Ct. 770
 
 ,
 
 178 L.Ed.2d 624
 
 (2011). Section 2254(d) provides:
 

 An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
 

 (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
 

 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
 

 28 U.S.C. § 2254
 
 (d).
 

 Clearly established federal law applicable to the claim
 

 In determining whether Pavatt is entitled to federal habeas relief under § 2254(d)(1), we must identify the "clearly established Federal law" that applies to Pavatt's claim. As the majority correctly notes, aggravating factors in a capital case, such as the HAC aggravator found by the jury in Pavatt's case, "operate as 'the functional equivalent of an element of a greater offense.' "
 
 Ring v. Arizona
 
 ,
 
 536 U.S. 584
 
 , 609,
 
 122 S.Ct. 2428
 
 ,
 
 153 L.Ed.2d 556
 
 (2002) (quoting
 
 Apprendi v. New Jersey
 
 ,
 
 530 U.S. 466
 
 , 494,
 
 120 S.Ct. 2348
 
 ,
 
 147 L.Ed.2d 435
 
 (2000) ). Consequently, due process requires that the evidence presented at trial be sufficient to support an aggravator.
 
 Jackson v. Virginia
 
 ,
 
 443 U.S. 307
 
 , 319,
 
 99 S.Ct. 2781
 
 ,
 
 61 L.Ed.2d 560
 
 (1979). In assessing a sufficiency-of-evidence challenge to an aggravator, "the relevant question [therefore] is whether, after viewing the evidence in the light most favorable to the prosecution,
 
 any
 
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."
 

 Id.
 

 (emphasis in original).
 

 Merits of the claim
 

 The majority opinion does not directly address this claim. It does, however, seem to concede that "a reasonable juror could have found" the State's evidence "to be sufficient evidence of conscious physical suffering." Maj. Op. at 1130. With this I would agree. And, in any event, I conclude, for the reasons outlined below, that the OCCA's resolution of the claim was neither contrary to nor an unreasonable application of clearly established federal law.
 

 In challenging the OCCA's decision, Pavatt begins by offering his own summary of the relevant evidence, arguing that the crime at issue resulted in "[a] shotgun death" that involved "no conscious suffering beyond what accompanies any murder." Aplt. Br. at 21. According to Pavatt, "[t]here was no gratuitous violence," "no torture," and "no anguish or suffering beyond that which necessarily accompanied the underlying killing."
 

 Id.
 

 Further, Pavatt argues that "[t]he two shotgun blasts were both independently fatal" and Rob Andrew "could not have remained conscious for more than a few moments, before going into shock and quickly bleeding to death."
 
 Id.
 
 at 21-22. In sum, Pavatt argues, "[i]f Rob Andrew's homicide was 'heinous, atrocious or cruel,' then any murder in which the victim does not die instantly satisfies this factor."
 
 Id.
 
 at 22.
 

 The problem with Pavatt's description of the evidence is that it wholly ignores the standard of review mandated by the Supreme Court in
 
 Jackson
 
 . As we have noted,
 
 Jackson
 
 requires a reviewing court to "view[ ] the evidence in the light most favorable to the prosecution."
 
 443 U.S. at 319
 
 ,
 
 99 S.Ct. 2781
 
 . When that standard is applied to the evidence presented in Pavatt's case, it simply does not support his description of the relevant facts. Although it is true that each of the shotgun blasts were independently lethal, Pavatt is simply incorrect in asserting that Rob Andrew "could not have remained conscious for more than a few moments." Aplt. Br. at 21. Indeed, the medical examiner who testified on behalf of the prosecution conceded it was possible that Rob Andrew remained conscious for several minutes after sustaining the wounds. And that testimony, combined with Brenda Andrew's statements to the 911 operator regarding Rob Andrew's condition (which we will discuss in greater detail below), would have allowed the jury to reasonably find that he indeed remained conscious far longer than "a few moments."
 

 Pavatt also argues that the OCCA "relied on irrelevant speculation about what Rob [Andrew] was feeling." Aplt. Br. at 24. In support, Pavatt examines and attempts to discredit each of the factors cited by the OCCA in support of its determination. To begin with, Pavatt asserts that "[t]he 'numerous wounds ' referred to by the OCCA were caused by pellets from the same shotgun, shot at nearly the same time."
 
 Id.
 
 at 32. Although Pavatt is correct on this point, that does not prove the OCCA's determination to be wrong. Indeed, the medical examiner testified at trial that the two shotgun blasts damaged Rob Andrew's right lung, aorta, and liver. In addition, the photographs of Rob Andrew's body quite clearly indicate that the shotgun pellets caused numerous, separate entry and exit wounds on his body. And, although Pavatt asserts that these wounds"did not contribute to an inordinate amount of conscious pain prior to death,"
 
 id.
 
 at 30, the medical examiner testified to the contrary, noting the wounds would, indeed, have been painful.
 

 Pavatt in turn argues that, contrary to the OCCA's determination, "the quick loss of blood from both wounds resulted in shock and loss of consciousness within one minute."
 
 Id.
 
 But this argument ignores, and is ultimately contrary to, the testimony of the medical examiner. The medical examiner testified that, as a result of the blood loss associated with the wounds, Rob Andrew would have lost consciousness before he actually died. The medical examiner declined on direct examination to give an exact amount of time that Rob Andrew remained conscious after sustaining the wounds. On cross-examination, the medical examiner agreed that it was possible that Rob Andrew died less than one minute after sustaining the wounds, but he also testified that Rob Andrew "probably" would have lost consciousness within five minutes. Tr. at 2462. And, on redirect, the medical examiner testified it was possible that Rob Andrew remained conscious for more than one minute after sustaining the wounds. Ultimately, the medical examiner's testimony, construed in the light most favorable to the prosecution, would have allowed the jury to find that Rob Andrew remained conscious for several minutes after sustaining the wounds.
 

 Pavatt argues that the fact that Rob Andrew was found "clutching the plastic trash bag was meaningless in determining whether [he] consciously suffered and thus, it was unreasonable for the OCCA to speculate about why [he] may have been holding the bag." Aplt. Br. at 30. I disagree. It is unknown whether Rob Andrew was holding the trash bag prior to being
 ambushed, or whether, instead, he was able to pick up the bag and attempt to fend off his attacker after sustaining one or both shotgun blasts. Because the OCCA was obligated to view the evidence in the light most favorable to the prosecution, it was entirely reasonable for it to draw the latter inference. And that inference was relevant to the OCCA's assessment of the sufficiency of the evidence supporting the HAC aggravator because it would have supported a finding that Rob Andrew remained conscious, and indeed mobile, after one or both shotgun blasts.
 

 Pavatt also complains that it was unreasonable for the OCCA "to conclude that Rob consciously suffered based on Brenda's statements in her 911 calls, when everything she said in those calls was determined to be false."
 
 Id.
 
 The fallacy of this argument, however, is the notion that all of Brenda's statements to the 911 operator were proven to be false. The fact of the matter is that at least some of Brenda's statements during the two 911 calls were obviously true. For example, it is undisputed that she was physically present with Rob Andrew after he suffered the two shotgun blasts and during at least the second 911 call. Further, her statements to the 911 operator that she and Rob Andrew had been shot were indisputably true. Likewise, some of her statements describing what she was witnessing, such as the arrival of police officers to her house, were also quite clearly true (indeed, officers' voices can be heard in the background during the second 911 call at the precise time that Brenda tells the 911 operator that the police have arrived on the scene). Thus, the jury, having listened to recordings of both 911 calls, was left to decide whether her statements to the 911 operator regarding Rob's condition, including her statement that he was conscious and attempting to talk to her, and her repeated statements that he was breathing, were credible or not. Although the jury was not bound to give credence to those statements, it was certainly within the jury's province to do so.
 
 See
 

 Perry v. New Hampshire
 
 ,
 
 565 U.S. 228
 
 ,
 
 132 S.Ct. 716
 
 , 732,
 
 181 L.Ed.2d 694
 
 (2012) (noting it is "the jury's task [to] assess[ ] witness credibility and reliability"). Consequently, I conclude it was in turn reasonable for the OCCA, applying the standard of review mandated by
 
 Jackson
 
 , to treat as credible Brenda's statements regarding Rob Andrew's condition in assessing the sufficiency of the evidence to support the HAC aggravator.
 

 Finally, Pavatt argues that no "deference [should be] afforded [the jury's verdict] under
 
 Jackson
 
 " because "[t]here were no conflicting facts about how Rob [Andrew] died." Aplt. Br. at 22. I disagree.
 
 Jackson
 
 provides, in relevant part, that "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." at 326. That is precisely the situation we have here. As we have already explained, the evidence presented at Pavatt's trial most certainly "supports conflicting inferences" regarding how long Rob Andrew remained conscious after sustaining the two shotgun blasts. We therefore presume that the jury in Pavatt's trial, having found the existence of the HAC aggravator, resolved these conflicts in favor of the prosecution. And, in turn, we, like the OCCA, must defer to that resolution.
 

 In sum, I conclude that Pavatt has failed to establish that the OCCA's determination that the evidence was sufficient to support the HAC aggravator was contrary to, or involved an unreasonable application of, clearly established federal law. Thus,
 Pavatt is not entitled to federal habeas relief on this claim.
 

 D
 

 In his third and final challenge, Pavatt argues that the HAC aggravating circumstance, as applied in his case, is unconstitutionally vague in violation of the Eighth Amendment. The majority agrees with Pavatt and indeed grants him federal habeas relief on the basis of this claim. In doing so, however, the majority ignores the fact that the claim is both procedurally barred and not properly before this court. Moreover, even ignoring these procedural problems, the majority's analysis ignores the fact that the jury's finding of the HAC aggravator in Pavatt's case is entirely consistent with the body of OCCA case law that has tailored and applied the HAC aggravating circumstance in a manner that avoids the arbitrary and capricious infliction of the death penalty. Consequently, Pavatt is not entitled to federal habeas relief on the basis of this claim.
 

 Pavatt's failure to present the claim to the OCCA
 

 In his second application for state post-conviction relief, Pavatt argued to the OCCA that the HAC aggravating circumstance was facially vague, in violation of the Eighth and Fourteenth Amendments (i.e., a facial challenge to the HAC aggravating circumstance). The OCCA declined to review the merits of that claim, noting that the claim could have been raised in Pavatt's first application for state post-conviction relief.
 

 At no point has Pavatt ever argued to the OCCA that the HAC aggravating circumstance, as applied in his case, is unconstitutionally vague in violation of the Eighth and Fourteenth Amendments (an as-applied challenge). Consequently, the OCCA has never had an opportunity to address that claim. And, were Pavatt to attempt to present the claim now to the OCCA, by way of a belated application for state post-conviction relief, the OCCA would presumably treat it as untimely and procedurally barred. Thus, the claim has been procedurally defaulted for purposes of federal habeas review.
 
 See
 

 Coleman v. Thompson
 
 ,
 
 501 U.S. 722
 
 , 735 n.1,
 
 111 S.Ct. 2546
 
 ,
 
 115 L.Ed.2d 640
 
 (1991) ("This rule [allowing a federal habeas court's consideration of fairly presented federal claims] does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is a procedural default for purposes of federal habeas ....");
 
 Cole v. Trammell
 
 ,
 
 755 F.3d 1142
 
 , 1169 (10th Cir. 2014) ("Cole has never presented this argument to the Oklahoma state courts and it is therefore unexhausted and subject to an anticipatory procedural bar.").
 

 Pavatt's federal habeas petition
 

 In his federal habeas petition, Pavatt reasserted his facial challenge to the HAC aggravating circumstance. More specifically, in Ground Thirteen of his petition, Pavatt argued that the Eighth and Fourteenth Amendments were violated by Oklahoma's continued use of what he described as "the facially vague aggravating circumstance that a murder is: especially heinous, atrocious, or cruel." Dist. Ct. Docket No. 42 at 172 (capitalization omitted).
 

 And, for the first time ever, Pavatt hinted at the possibility of an as-applied challenge to the HAC aggravating circumstance, but did not directly assert that as an independent ground for federal habeas relief. In Ground Ten of his petition, Pavatt argued, as he had on direct appeal,
 that the evidence presented at trial was constitutionally insufficient to allow the jury to find the existence of the HAC aggravating circumstance. As part of his Ground Ten arguments, Pavatt asserted for the first time ever that his sentence "did not comport with the Eighth and Fourteenth Amendments,"
 
 id.
 
 at 147, and he compared the facts of his case to other Oklahoma capital cases that purportedly involved victims who survived for a brief time after being injured.
 
 Id.
 
 at 150-51, 154-55.
 

 The district court concluded that Ground Thirteen-Pavatt's facial challenge to the HAC aggravating circumstance-was "barred from federal review" because the OCCA had declined to review it due to Pavatt's failure to raise it in a timely fashion. Dist. Ct. Docket No. 91 at 90. As for Ground Ten, both the respondent and the district court understandably treated it as alleging only an insufficiency-of-evidence claim and not an as-applied vagueness challenge to the HAC aggravating circumstance.
 
 See
 
 Dist. Ct. Docket No. 69 at 128 ("In Ground Ten, Petitioner alleges that insufficient evidence was presented at trial to support the jury's finding of the especially heinous, atrocious or cruel aggravator."); Dist. Ct. Docket No. 91 at 80 ("In Ground Ten, Petitioner challenges the sufficiency of the evidence supporting the jury's finding that Rob's murder was especially heinous, atrocious, or cruel."). Because Pavatt had raised an insufficiency-of-evidence challenge on direct appeal, the respondent conceded that the claim was "exhausted for purposes of federal habeas review," Dist. Ct. Docket No. 69 at 128, and the district court agreed. Dist. Ct. Docket No. 91 at 81-82. Ultimately, the district court rejected Pavatt's insufficiency-of-evidence claim, applying the deferential standard of review outlined in § 2254(d).
 
 Id.
 
 at 83-84 ("Based on the presented evidence, and with acute awareness of the double deference applied by the Court in the resolution of this claim, the Court finds that Petitioner has not shown that this decision by the OCCA is contrary to or an unreasonable application of Supreme Court law.").
 

 Pavatt's appeal to this court
 

 Although the district court denied Pavatt a COA, this court, in a November 24, 2014 case management order, granted Pavatt a COA as to four claims, including (1) the question of "[w]hether there was sufficient evidence to support the 'especially heinous, atrocious, or cruel' aggravator (raised in Ground 10 of [his] habeas petition)," and (2) "whether the trial court's failure to provide an adequate instruction to the jury that it must find 'conscious physical suffering' beyond a reasonable doubt before finding that the murder was 'especially heinous, atrocious, or cruel' violated ... Pavatt's constitutional rights to a fair trial, a reliable sentencing determination, and due process (raised in Ground 11 of [his] habeas petition)." Case Mgmt. Order at 1-2. Notably, the case management order made no mention of Pavatt's as-applied or facial vagueness challenges to the HAC aggravating circumstance. Thus, those arguments are not properly before this court.
 

 Nevertheless, Pavatt, in what amounts to either ignorance or defiance of the case management order, filed appellate pleadings inserting as-applied vagueness arguments into his discussion of his insufficiency-of-evidence claim.
 

 The majority opinion
 

 Remarkably, the majority opinion ignores all of these procedural problems and ultimately grants Pavatt federal habeas relief on the basis of his as-applied vagueness arguments. I disagree with this approach
 and would reject Pavatt's as-applied arguments as (1) not properly before this court because no COA was granted on those arguments, and (2) subject to an anticipatory procedural bar due to Pavatt's failure to present them to the OCCA.
 

 The majority opinion also, curiously, purports to apply the deferential AEDPA standards to Pavatt's as-applied arguments, even though it is quite clear that those arguments were never presented to or addressed by the OCCA. Indeed, the majority opinion takes the OCCA to task for failing to "apply[ ] or even consider[ ] controlling Supreme Court precedent," and in turn concludes that the OCCA's "decision [was] contrary to clearly established federal law." Maj. Op. at 1132. But that begs the question of what OCCA decision the majority opinion is referring to?
 

 The merits of Pavatt's as-applied arguments
 

 Even if I were to ignore the serious procedural defects described above and reach the merits of Pavatt's as-applied challenge to the HAC aggravating circumstance, I would reach a different conclusion than the majority.
 

 OCCA case law, which the majority all but ignores, identifies at least two categories of murders that the HAC aggravator does not apply to, and both are distinguishable from the murder committed by Pavatt. The first category of murders are those in which the victim dies instantaneously or nearly so. A perfect case in point is
 
 Simpson v. State
 
 ,
 
 230 P.3d 888
 
 (Okla. Crim. App. 2010). The defendant in that case shot and killed two victims who were traveling inside of a car. The first victim, who was driving the car at the time of the shooting, "was shot four times," including "a grazing gunshot wound to the right shoulder, two superficial gunshot wounds to the left side of his back, and an ultimately fatal gunshot wound to his chest."
 

 Id.
 

 at 902
 
 . "Although [this victim] was initially conscious after being shot, his breathing became labored and he made gurgling sounds as his chest filled with blood before he died."
 

 Id.
 

 at 902-03
 
 . "There was [also] testimony that immediately after he had been shot, [this victim] was able to speak, was aware that he had been shot and was fearful that the shooters would return."
 

 Id.
 

 at 903
 
 . "Reviewing th[is] evidence in the light most favorable to the State," the OCCA concluded "that the evidence support[ed]" the jury's "finding that [this victim's] death was preceded by physical suffering and mental cruelty."
 
 Id.
 
 "With regard to the murder of [the second victim, who was the front seat passenger], the evidence showed that his death was nearly immediate."
 

 Id.
 

 In particular, he "suffered numerous gunshot wounds including wounds to his head and chest" and "[t]he Medical Examiner testified that [his] injuries were not survivable and he likely died within seconds after being shot."
 

 Id.
 

 Notably, the OCCA concluded that this "evidence d[id] not show, beyond a reasonable doubt and in a light most favorable to the State, that [the second victim's] death was preceded by torture or that he endured conscious physical suffering before dying."
 

 Id.
 

 In short, the OCCA in
 
 Simpson
 
 drew a distinction between murders in which the victim's death is instantaneous and murders in which the victim experiences conscious physical suffering for some period of time after being wounded.
 

 Notably,
 
 Simpson
 
 is but one of many cases in which the OCCA has refused to allow application of the HAC aggravating circumstance where a murder victim's death was instantaneous or nearly so. Indeed, Pavatt cites to numerous such cases in his opening appellate brief (I cite these cases in the same order they are listed in
 that brief).
 
 See
 

 Brown v. State
 
 ,
 
 753 P.2d 908
 
 , 912 (Okla. Crim. App. 1988) (victim was shot seven times, including once in the aorta and once in the heart; no evidence was presented indicating that victim was conscious after one or more of the shots);
 
 Davis v. State
 
 ,
 
 888 P.2d 1018
 
 , 1021 (Okla. Crim. App. 1995) ("No testimony indicated that the victims who died were conscious or suffered pain at any time.");
 
 Sellers v. State
 
 ,
 
 809 P.2d 676
 
 , 690 (Okla. Crim. App. 1991) (no evidence that any of the three victims were conscious or suffered after being shot by the defendant);
 
 Booker v. State
 
 ,
 
 851 P.2d 544
 
 , 548 (Okla. Crim. App. 1993) (concluding that testimony of medical examiner, regarding victim who was shot in the chest with a shotgun, was "as consistent with instantaneous death as any other possibility");
 
 Marquez v. State
 
 ,
 
 890 P.2d 980
 
 , 987 (Okla. Crim. App. 1995) (noting that the victim "was shot approximately three times while asleep," "[t]he injuries caused by two of the shots could have been fatal," and one of those shots "would have caused death nearly instantaneously.");
 
 Cheney v. State
 
 ,
 
 909 P.2d 74
 
 , 80 (Okla. Crim. App. 1995) (striking HAC aggravator where the shooting at issue lasted only seconds and some of the wounds would have rendered the victim immediately unconscious);
 
 Myers v. State
 
 ,
 
 133 P.3d 312
 
 , 332 (Okla. Crim. App. 2006) ("The evidence does not prove [the victim] was conscious and aware of her attack or that she was conscious and alive suffering pain after the attack.");
 
 Crawford v. State
 
 ,
 
 840 P.2d 627
 
 , 641 (Okla. Crim. App. 1992) ("No testimony was elicited by either the State or the defense as to the level of suffering by the decedent," and "no evidence was presented to show that the decedent did not die instantly as a result of the strangulation.");
 
 Battenfield
 
 ,
 
 816 P.2d at 565
 
 (assistant medical examiner testified "that the type of blow to the victim's head would generally cause loss of consciousness immediately.").
 

 The second, and undeniably more limited, category of murders that the OCCA has indicated do not warrant application of the HAC aggravator are those in which death is not instantaneous, but where the victim, though conscious for some period of time, does not experience severe physical suffering. This category is exemplified by
 
 Cudjo v. State
 
 ,
 
 925 P.2d 895
 
 (Okla. Crim. App. 1996). The murder victim in that case was shot a single time in the back of the head. Although the victim "was aware he had been injured, he was not sure what type of wound he had received (i.e. gun shot wound or blow to the head)."
 

 Id.
 

 at 901
 
 . "Moreover, the gravity of [the victim's] injury was not apparent to others at the [crime] scene."
 

 Id.
 

 For example, one police officer testified that the victim "was coherent and making sense."
 

 Id.
 

 Another police officer testified that the victim indicated "he was all right."
 

 Id.
 

 At worst, the evidence indicated that the victim "experienced nausea, vomiting and shortness of breath and complained about his head hurting."
 

 Id.
 

 Ultimately, after being taken to a local hospital, the victim "became unresponsive and ... later died."
 

 Id.
 

 The defendant in
 
 Cudjo
 
 argued on direct appeal that this evidence was insufficient to support the jury's finding of the HAC aggravating circumstance. The OCCA agreed, noting that while the victim "did experience some conscious physical or mental suffering prior to his death, the evidence fail[ed] to demonstrate that the murder was preceded by torture or serious physical abuse."
 

 Id.
 

 Pavatt's case does not fit within, and is reasonably distinguishable from, these two categories of cases. Comparing Pavatt's case to
 
 Simpson
 
 , it is readily apparent that Rob Andrew's situation was most similar to that of the first victim in
 
 Simpson
 
 , who
 remained conscious after being shot and experienced severe physical suffering, and was distinguishable from that of the second victim in
 
 Simpson
 
 , who died almost instantaneously after being shot. Pavatt's case is also distinguishable from
 
 Cudjo
 
 for the simple reason that the evidence in Pavatt's case would have allowed the jury to find that Rob Andrew, unlike the victim in
 
 Cudjo
 
 , experienced significant pain for a period of time before dying. Thus, contrary to what the majority may say, Pavatt's case can be distinguished in a "principled way" from numerous Oklahoma cases in which the OCCA has held that the HAC aggravating circumstance cannot be applied.
 

 III
 

 One final matter deserves mention. The majority opinion cryptically "reverse[s] the denial of [federal habeas] relief with respect to [Pavatt's] sentence and remand[s] to the district court for further proceedings." Maj. Op. at 1118. The majority opinion also notes that "[t]he jury ... found the remuneration aggravator" and that "[t]he parties have not presented arguments on what effect that has on the disposition of this case."
 

 Id.
 

 at 1124 n.3. In my view, it is unclear what these statements are intended to mean for the district court and the parties. Moreover, I submit that the only remedy that the district court may impose in light of the Sixth Amendment is to order the State of Oklahoma to provide Pavatt with a new sentence proceeding within a reasonable time.
 
 Cf.
 

 Hooks v. Workman
 
 ,
 
 689 F.3d 1148
 
 , 1208 (10th Cir. 2012) ("We therefore grant the writ with respect to Mr. Hooks's sentence,
 
 subject to the condition
 
 that the State of Oklahoma resentence him within a reasonable time.").
 

 Oklahoma law outlines three possible sentencing options for a person convicted of murder in the first degree: death, imprisonment for life without parole, or imprisonment for life.
 
 Okla. Stat. tit. 21, § 701.9
 
 (A). Where, as here, the State seeks imposition of the death penalty, Oklahoma law requires the trial court to "conduct a separate sentencing proceeding" before a jury.
 
 [3]
 

 Id.
 

 § 701.10(A). At this separate sentencing proceeding, "evidence may be presented as to any mitigating circumstances or as to any of the [statutory] aggravating circumstances."
 

 Id.
 

 § 701.10(C). In order for the jury at the separate sentencing proceeding to recommend a sentence of death, Oklahoma law requires the jury to make two related findings of fact. First, the jury must unanimously find beyond a reasonable doubt the existence of one or more of the statutory aggravating circumstances.
 

 Id.
 

 § 701.11. Second, the jury must then unanimously find that any such aggravating circumstance(s) outweigh the mitigating circumstances alleged by the defendant.
 

 Id.
 

 Oklahoma's capital sentencing scheme in turn requires the OCCA to review every sentence of death that is imposed and determine, in pertinent part, whether the evidence supports each of the statutory aggravating circumstances found by the jury.
 

 Id.
 

 § 701.13(C)(2). The OCCA is expressly authorized by statute to "[a]ffirm the sentence of death" or to "[s]et the sentence aside and remand the case for resentencing by the trial court."
 
 Id.
 
 § 701.13(E). The statute also appears to imply that the OCCA can "correct[ ]" any
 errors in the sentence.
 

 Id.
 

 And, indeed, the OCCA has at times done just that by engaging in its own reweighing after invalidating an aggravating circumstance.
 
 E.g.
 
 ,
 
 Moore v. State
 
 ,
 
 809 P.2d 63
 
 , 65-66 (Okla. Crim. App. 1991).
 

 Historically, the Supreme Court has allowed for such independent reweighing by state appellate courts.
 
 See
 

 Richmond v. Lewis
 
 ,
 
 506 U.S. 40
 
 , 49,
 
 113 S.Ct. 528
 
 ,
 
 121 L.Ed.2d 411
 
 (1992) ("Where the death sentence has been infected by a vague or otherwise constitutionally invalid aggravating factor, the state appellate court or some other state sentencer must actually perform a new sentencing calculus, if the sentence is to stand.");
 
 Clemons v. Mississippi
 
 ,
 
 494 U.S. 738
 
 ,
 
 110 S.Ct. 1441
 
 ,
 
 108 L.Ed.2d 725
 
 (1990) ("We see no reason to believe that careful appellate reweighing of aggravating against mitigating circumstances in cases such as this would not produce 'measured consistent application' of the death penalty or in any way be unfair to the defendant.").
 

 But that precedent appears to be of questionable validity in light of the Supreme Court's recent decision in
 
 Hurst v. Florida
 
 , --- U.S. ----,
 
 136 S.Ct. 616
 
 ,
 
 193 L.Ed.2d 504
 
 (2016). At issue in
 
 Hurst
 
 was the constitutionality of Florida's capital sentencing scheme. Under that scheme, a capital defendant could be sentenced to death "only if an additional sentencing proceeding 'result[ed] in findings by the court that such person shall be punished by death.' "
 

 Id.
 

 at 617
 
 (quoting
 
 Fla. Stat. § 775.082
 
 (1) ). More specifically, the trial judge had to "independently find and weigh the aggravating and mitigating circumstances before entering a sentence of life or death."
 

 Id.
 

 The Supreme Court "h[e]ld this sentencing scheme unconstitutional."
 

 Id.
 

 at 619
 
 . In doing so, the Court explained that "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death."
 
 Id.
 
 ;
 
 see also
 

 Ring
 
 ,
 
 536 U.S. at 589
 
 ,
 
 122 S.Ct. 2428
 
 ("Capital defendants, no less than noncapital defendants, we conclude, are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment.").
 

 To be sure, the Supreme Court has not yet revisited the issue of appellate reweighing since issuing
 
 Hurst
 
 . But the implications of
 
 Hurst
 
 seem clear. Appellate reweighing, at least under a capital sentencing scheme like the one at issue in Oklahoma, requires an appellate court to make a new and critical finding of fact, i.e., whether the remaining valid aggravating circumstances outweigh any mitigating circumstances alleged by the defendant. In light of
 
 Hurst
 
 , it appears clear that such a factual finding can be made only by a jury. All of which leaves only one option in this case: grant the writ subject to the State of Oklahoma affording Pavatt with a new sentencing proceeding.
 
 [4]
 

 IV
 

 Because I conclude that all of the issues asserted by Pavatt in this appeal lack merit, I would affirm the district court's denial of Pavatt's petition for writ of habeas corpus.
 

 Indeed, we have recognized that Oklahoma law generally
 
 requires
 
 that a claim of ineffective assistance of trial counsel be raised on direct appeal.
 
 See
 

 Cole v. Trammell
 
 ,
 
 755 F.3d 1142
 
 , 1159 (10th Cir. 2014).
 

 "
 
 Valdez
 
 was special because the lawyers there knew that their client was a citizen of Mexico and nonetheless failed to comply with the Vienna Convention when they failed to contact the Mexican Consulate, thereby depriving the Consulate [of] the ability to intervene and present its discovery that the defendant suffered from organic brain damage."
 
 Williams
 
 ,
 
 782 F.3d at 1213
 
 .
 

 The separate sentencing proceeding is typically held before the same jury that found the defendant guilty of murder in the first degree.
 
 Okla. Stat. tit. 21, § 701.10
 
 (A). But where error is determined to have occurred in the original capital sentencing proceeding, the state trial court is authorized "to impanel a new sentencing jury who shall determine the sentence of the defendant."
 

 Id.
 

 § 701.10a(1)(b).
 

 By determining that the evidence presented at Pavatt's sentencing proceeding was insufficient to support the jury's finding of the HAC aggravating circumstance, the majority's decision in this case necessarily invalidates not only that aggravating circumstance, but also the jury's ultimate, and inextricably intertwined finding that the aggravating circumstances that it found outweighed the mitigating circumstances alleged by Pavatt.